[S.F. No. 22778. In Bank. Mar. 1, 1971.]

LONNIE EUGENE KERLEY, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD and
GENERAL CABLE COMPANY, Respondents.

COUNSEL

Levy & Van Bourg and Barry J. Williams for Petitioner.

Sumner J. Spielman as Amicus Curiae on behalf of Petitioner.

Rupert A. Pedrin, Richard E. Ryan and Lloyd A. Carlson for Respondents.

OPINION

**BURKE, J.**—Petitioner Lonnie Eugene Kerley seeks review of a decision, after reconsideration, of the Workmen's Compensation Appeals Board, refusing to assess a 10 percent penalty against respondent employer, General Cable Company, for unreasonable delay in paying compensation. (Lab. Code, § 5814.)[1] We have concluded that the appeals board's decision lacks the support of substantial evidence and must therefore be annulled.

In 1959 petitioner began his employment with General Cable Company, a permissibly self-insured employer. In February 1967 he underwent back surgery for a nonindustrial injury. On September 6, 1967, after several months of recuperation, he returned to work. Eight days later, while forcibly attempting to cut a thick power cable, petitioner felt a pain which started in his back and went down through his hip, as well as a burning pain in his neck.[2] He reported the injury to his supervisor who immediately assigned him to a job which would put no further strain on his back. Upon leaving the plant that afternoon, petitioner noticed stiffness in his upper back and numbness in his left leg. The following day, Friday, in the absence of Dr. King, the orthopedist who performed the February surgery, petitioner consulted Dr. Branick. The following Monday, he was examined by respondent employer's company physician, Dr. Murphy. Upon Dr. King's return from vacation petitioner consulted him and was thereafter

---

[1]Labor Code section 5814: "When payment of compensation has been unreasonably delayed or refused, either prior to or subsequent to the issuance of an award, the full amount of the order, decision or award shall be increased by 10 percent. The question of delay and the reasonableness of the cause therefor shall be determined by the appeals board in accordance with the facts. Such delay or refusal shall constitute good cause under Section 5803 to rescind, alter or amend the order, decision or award for the purpose of making the increase provided for herein." All statutory references herein will be to the Labor Code.

[2]Petitioner was using a large pair of cutting shears to cut copper cable approximately one inch thick. In order to do so, he had laid the cable on the ground and jumped up and down on the handle of the shears. He had cut two pieces in this manner and was working on the third piece when he felt the pain. Between the time of the spinal surgery in February and the date of the accident, petitioner was free of pain. He had not experienced any of the particular symptoms which resulted from the September 14 industrial injury prior to that time.

under his care. Petitioner did not return to work after September 14, and has not worked since that date.

On February 9, 1968, petitioner was awarded temporary disability compensation of $67.93 per week, commencing September 15, 1967. On December 1, 1968, General Cable discontinued the payments and on December 11 filed a petition to terminate compensation for temporary disability, alleging that temporary disability had ceased as of November 11. Petitioner, through his new attorneys, objected to the petition, requested a hearing, and at the same time requested that respondent employer begin advancing $52.50 per week (the maximum permanent disability rate) pursuant to section 4650.[3] Apparently there was no reply to petitioner's request; in any event, no compensation was advanced.

On February 19, 1969, a hearing was held at which petitioner was the only witness. At the conclusion of the hearing, the referee indicated that he intended to find petitioner's condition permanent and stationary. On March 17, 1969, after reviewing the testimony and the medical reports submitted prior to the February hearing, the referee served a recommended rating of 43 percent permanent disability on the respective parties. Respondent employer filed no objections to the rating (Cal. Admin. Code, tit. 8, § 10904), with respect to either the percentage of disability or the lack of any apportionment, but simply continued in its refusal to provide any benefits. On June 10, 1969, the referee filed his findings and award which provided permanent disability benefits based on a rating of 43 percent total disability; in addition, he assessed a 10 percent penalty against respondent employer for unreasonable refusal to pay benefits. On the employer's petition, the appeals board granted reconsideration. In an *en banc* opinion, the board held that respondent employer's refusal to advance benefits was not unreasonable and reversed the award of the 10 percent penalty. Petitioner's request for reconsideration was denied and the petition for review followed.

As we have recently stated, our review is confined to the question of whether, under applicable principles of law, the award of the appeals board is supported by substantial evidence. (*LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 637 [83 Cal.Rptr. 208, 463 P.2d

[3]Section 4650: "If an injury causes temporary disability, a disability payment shall be made for one week in advance as wages on the eighth day after the injured employee leaves work as a result of the injury; provided, that in case the injury causes disability of more than 49 days or necessitates hospitalization the disability payment shall be made from the first day the injured employee leaves work or is hospitalized as result [*sic*] of the injury. If the injury causes permanent disability, a disability payment shall be made for one week in advance as wages on the eighth day after the injury becomes permanent or the date of last payment for temporary disability, whichever date first occurs."

432].) The application of section 5814 has been the subject of a number of appellate decisions. ▉ A review of those cases clearly reveals that, although denominated a "penalty," the section is to be interpreted liberally, in accordance with the general purpose of the workmen's compensation laws.[4] (E.g., *Langer* v. *Workmen's Comp. App. Bd.* (1968) 258 Cal. App.2d 400 [65 Cal.Rptr. 598]; *Davison* v. *Industrial Acc. Com.* (1966) 241 Cal.App.2d 15 [50 Cal.Rptr. 76]; *Argonaut Ins. Co.* v. *Industrial Acc. Com.* (1962) 210 Cal.App.2d 267 [26 Cal.Rptr. 470] (hg. den.).)

▉ In *Davison, supra* (p. 18), the court held that section 5814 authorized imposition of more than one penalty in cases of successive refusals to provide compensation, stating that, "We think a rule of liberal construction is applicable to all aspects of workmen's compensation, including penalties." We agree.

▉ The language of the statute makes it abundantly clear that an employer or carrier has no absolute right to delay the provision of benefits until a formal hearing. Section 5814 provides, in part, that "When payment of compensation has been unreasonably delayed or refused, *either prior to or subsequent to the issuance of an award,* the full amount of the order, decision or award shall be increased by 10 percent." (Italics added.) The statute does not distinguish between the refusal to pay prior to and the refusal to pay subsequent to the award, and no persuasive reasons have been advanced why any such distinction should be made. In either case, the burden is on the employer or carrier to establish the existence of a genuine doubt, from a medical or legal standpoint, as to its liability for the benefits to be advanced.[5] (*Ramirez* v. *Workmen's Comp. App. Bd.* (1970) 10 Cal.App.3d 227, 234-235 [88 Cal.Rptr. 865]; *Berry* v. *Workmen's Comp. App. Bd., supra,* 276 Cal.App.2d 381, 384 (hg. den.); *Giltner* v. *Workmen's Comp. App. Bd.* (1970) 35 Cal.Comp. Cases 269; see *Reynolds Elec. etc. Co.* v. *Workmen's Comp. App. Bd.* (1966) 65 Cal.2d 438, 445-446 [55 Cal.Rptr. 254, 421 P.2d 102], and cases cited therein.) With these principles in mind, we turn now to the evidence which was before the appeals board.

At the February 19 hearing, petitioner testified substantially as follows:

---

[4]Section 3202: "The provisions of [the workmen's compensation law] shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment."

[5]That there may be some dispute as to the extent of the disability is obviously no reason to withhold any advances, particularly in view of the fact that each percentage of permanent disability incurred allows an injured employee four weeks of permanent disability payments (§ 4658), and a hearing on the issue of permanent disability can be had without prejudicial delay in virtually every case except those in which the employer has good cause to believe that there is clearly no permanent disability. (See *Berry* v. *Workmen's Comp. App. Bd.*, 276 Cal.App.2d 381, 385 [81 Cal.Rptr. 65].)

Since the time of the accident, he had had continuing pain in his hip, upper back, and around the shoulder and neck area; the pain increased with increased activity such as walking, riding, lifting, bending, etc., and became sharp if he coughed or exercised to any substantial extent; he had been subject to constant headaches which became more severe with increased physical activity. Petitioner recounted a number of efforts to keep himself active, but all activity (e.g., yard work, sawing lumber, riding a motorcycle) ultimately resulted in his feeling greater pain. At the time of the hearing he was taking prescribed medication for the pain, as well as prescribed sleeping pills, on a regular basis. On cross-examination no contradictory information was elicited, petitioner testifying that his condition had not improved since November 1968 (the month of his last visit to Dr. King), and that he had had no other injury since the industrial accident. Respondent employer presented no testimony.

In addition to the testimony of petitioner, the referee considered a number of medical reports which had been filed. At the time of the hearing, the referee had before him seven reports from Dr. King, one report from Dr. Calanchini, a neurologist, two reports of Dr. Colton, a neurological surgeon, and one report of Dr. Gordon, an orthopedic surgeon consulted most recently by petitioner. Those reports, which covered the period between April 1968 and February 1969, made it abundantly clear that petitioner had suffered a substantial disability and that his condition was not improving.[6]

Dr. King, after examining petitioner on November 11, 1968, reported that "he had not improved in any way whatsoever. He has multiple complaints, which include headaches, pains in the right side of the neck, pain in the right arm, pain between the shoulder blades, and pain in the lower part of the back with radiating pain into the extremity." After confessing his inability to explain the condition, Dr. King went on to say that "the time has come when his condition should be declared permanent, stationary and rateable, or if you so desire, perhaps you would like to refer him to some other orthopedic surgeon with the hope that some satisfactory ex-

---

[6]In addition the referee had the original report of the injury prepared by Dr. Murphy, in which he stated that he was "inclined to deny liability," and a letter from Dr. Murphy dated January 16, 1968. In the latter, Dr. Murphy (who had not seen petitioner since the original injury was reported) stated that "Further investigative studies might help to clarify the matter some more, but without these I would have to conclude that his present complaints are all connected with his old back problems." It is clear that this letter, which was prepared prior to and without the benefit of any of the medical reports mentioned in the text, could not justify a finding that the injury was not industrially caused under the substantial evidence test of *LeVesque* v. *Workmen's Comp. App. Bd., supra,* 1 Cal.3d 627. However, no other evidence was presented or even alluded to at argument which would justify a reasonable belief that no compensable permanent liability existed.

planation of his complaints can be found, and hopefully eliminated." No such reference was made by respondent employer.

Petitioner, however, consulted Dr. Gordon, an orthopedic surgeon, who, in a January 7, 1969, report, opined that petitioner's condition was not yet permanent and suggested continued treatment. At the request of respondent's attorneys, Dr. King commented on this report, terming it "fair and straightforward," but holding to his previous opinion that petitioner's condition was permanent and stationary. In that letter Dr. King suggested that 25 percent of petitioner's permanent disability could be attributed to his previous back trouble and 75 percent to the industrial injury. Other reports essentially confirmed the facts set forth in Dr. King's reports and testified to by petitioner.

It is abundantly clear that petitioner had suffered an injury which left him seriously disabled; that his physicians were unable to explain the condition or confidently prescribe any regimen which would improve it; and that petitioner was unable to do any work which involved physical activity for any length of time. Under virtually identical circumstances, an award was annulled and the appeals board directed to impose a 10 percent penalty. (*Berry* v. *Workmen's Comp. App. Bd., supra,* 276 Cal.App.2d 381.)

Respondents attempt to distinguish *Berry* on the ground that there the medical reports stated that the employee was able to do only light work, whereas in the instant case, no such explicit opinion was rendered. The contention is without merit. It is true that neither Dr. King nor any other physician who examined or treated petitioner expressly stated that he would be limited to a particular kind of work, but it is manifestly clear from the evidence summarized above that no other conclusion could reasonably be drawn. That respondents might not know for certain the precise amount of permanent disability is likewise no reason here—as it was not in *Berry*—for not making *any* payments.[7]

Respondents discuss the "many complex issues which ordinarily arise in connection with the determination of an employee's permanent disability." Doubtless such issues arise, but the plain fact is that in the case before us there is absolutely no evidence on which a finding of reasonable doubt can be supported.[8] In effect, respondents assert that because "Arriv-

---

[7] See footnote 5, *ante.*

[8] (See fn. 6, *ante.*) Respondents purport to find some comfort in *Ramirez* v. *Workmen's Comp. App. Bd., supra,* 10 Cal.App.3d 227. In *Ramirez,* the court ordered a penalty assessed despite the findings of both the referee and appeals board that the employer had not unreasonably delayed in making temporary disability payments. The then mooted issue of the reasonableness of the refusal to pay compensation for permanent disability prior to the award was disposed of in one sentence, citing the opinion

ing at a decision on the exact degree of disability is a difficult task under the most favorable circumstances" (*Liberty Mutual Ins. Co.* v. *Industrial Acc. Com.* (1948) 33 Cal.2d 89, 93 [199 P.2d 302]), the employer or his carrier is relieved of any responsibility for advance payments until either the referee has made an award or the employee has established beyond any reasonable doubt the nature and extent of his permanent disability. Such a result is contrary to the express terms of section 5814 and is clearly inconsistent with the statutory admonition to liberal interpretation of the workmen's compensation laws.[9]

 In summary, we hold that the only satisfactory excuse for delay in payment of disability benefits, whether prior to or subsequent to an award, is genuine doubt from a medical or legal standpoint as to liability for benefits, and that the burden is on the employer or his carrier to present substantial evidence on which a finding of such doubt may be based. In the instant case, there was no evidence whatever to sustain such a finding. Accordingly, the award is annulled with directions to enter a new award providing for the statutory 10 percent penalty for late payment of benefits.

Wright, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.

---

of one of two attending physicians, whose report was the most recent one before the referee and whose findings were consistent with the other attending physician. (10 Cal. App.3d at pp. 232, 233, 236.)

[9]Decisions in which a penalty award has been annulled do not support respondents' contentions. In all of those cases there was substantial doubt as to whether *any* liability existed. (E.g., *Bridges* v. *Robinson* (1959) 24 Cal.Comp.Cases 59 (conflict over whether petitioner was employee or independent contractor); *Ruk* v. *Gotham Instrument Co.* (1949) 14 Cal.Comp.Cases 160 (serious question of whether any award was barred by the statute of limitations); *Thomas* v. *Loftus* (1946) 11 Cal.Comp. Cases 217 (initial diagnosis concluded that no industrial injury had been suffered, payment after second diagnosis held not to constitute unreasonable delay).)