[Civ. No. 53265. First Dist., Div. One. Jan. 25, 1983.]

PAUL ROHRBACK, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
M & J LOGGING et al., Respondents.

## Counsel

Abraham Virdeh for Petitioner.

Sedgwick, Detert, Moran & Arnold and John T. Bennett for Respondents.

## Opinion

**HOLMDAHL, J.**—This case presents a narrow issue of construction under *Kerley* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 223 [93 Cal.Rptr. 192, 481 P.2d 200], which set the standard for determining when employers are liable for a 10 percent increase in a worker's compensation award because of unreasonable delay in making payments, under Labor Code section 5814.[1] We are asked to decide how broad a meaning the Supreme Court intended for the term "liability" in holding "that the only satisfactory excuse for delay in payment of disability benefits . . . is genuine doubt from

---

[1] Section 5814 reads as follows: "When payment of compensation has been unreasonably delayed or refused, either prior to or subsequent to the issuance of an award, the full amount of the order, decision or award shall be increased by 10 percent. The question of delay and the reasonableness of the cause therefor shall be determined by the appeals board in accordance with the facts. Such delay or refusal shall constitute good cause under Section 5803 to rescind, alter or amend the order, decision or award for the purpose of making the increase provided for herein."

Further statutory references in this opinion will be to provisions of the Labor Code, except as otherwise indicated.

a medical or legal standpoint as to liability for benefits . . . ." (*Kerley* v. *Workmen's Comp. App. Bd., supra,* 4 Cal.3d 223, 230.)[2]

■ Employer M&J Logging and its insurance carrier Employee Benefits Insurance Company (collectively EBIC) contend that *Kerley* insulates them from the statutory penalty because of their doubt of liability to make further payment of compensation until they had fully offset overpayments and before the final order was issued. The Worker's Compensation Appeals Board (board) accepted this rationale. We hold, for a number of reasons, that EBIC's position is incorrect.

I.

There is and has been no dispute between the parties on the underlying question of liability.[3] Petitioner, then 50 years old, was employed by M&J Logging in its logging operations when, on July 14, 1977, a log weighing several tons rolled over him. He suffered internal injuries as well as injuries to his ribs, clavicle, and an arm. He had not returned to work again as of the last evidentiary hearing below.

---

[2]We reject petitioner's second argument, that the board erred in incorporating by reference the findings of the worker's compensation judge as the board's own. (See, e.g., *Gaiera* v. *Workmen's Comp. Appeals Board* (1969) 271 Cal.App.2d 246, 248 [76 Cal.Rptr. 656].)

[3]Section 3600, as it was then in effect, defined liability as follows: "Liability for the compensation provided by this division, in lieu of any other liability whatsoever to any person except as provided in Section 3706, shall, without regard to negligence, exist against an employer for any injury sustained by his employees arising out of and in the course of the employment and for the death of any employee if the injury proximately causes death, in those cases where the following conditions of compensation concur:

"(a) Where, at the time of the injury, both the employer and the employee are subject to the compensation provisions of this division.

"(b) Where, at the time of the injury, the employee is performing service growing out of and incidental to his employment and is acting within the course of his employment.

"(c) Where the injury is proximately caused by the employment, either with or without negligence.

"(d) Where the injury is not caused by the intoxication of the injured employee.

"(e) Where the injury is not intentionally self-inflicted.

"(f) Where the employee has not willfully and deliberately caused his own death.

"(g) Where the injury does not arise out of an altercation in which the injured employee is the initial physical aggressor.

"(h) *Where the injury does not arise out of voluntary participation in any off-duty recreational, social, or athletic activity not constituting part of the employee's work-related duties, except where such activities are a reasonable expectancy of, or are expressly or impliedly required by, the employment. The administrative director shall promulgate reasonable rules and regulations requiring employers to post and keep posted in a conspicuous place or places a notice advising employees of the provisions of this subdivision. Failure of the employer to post such a notice shall not constitute an expression of intent to waive the provisions of this subdivision.*" (Italics added.)

In this opinion, unless otherwise indicated we shall refer to "liable" and "liability" in the common or general sense intended by section 3600.

Most of the proceedings below were devoted to fixing the extent of petitioner's permanent disability. The case was submitted to the board's rating bureau four times, resulting in consecutive recommended permanent disability ratings of 80 percent, 82¼ percent, 86¼ percent, and—the figure ultimately utilized by the board in its award—96¼ percent. At no time did EBIC dispute any of the ratings; since the earliest pleading stages of the case, EBIC has admitted basic liability.

Thus, it is given that petitioner suffered an "injury . . . arising out of and in the course of the employment . . .," which was not rendered non-compensable under any of the subdivisions of section 3600.

II.

At a hearing on September 27, 1978, pursuant to the parties' stipulation, a board rehabilitation consultant ordered EBIC to pay temporary disability benefits of $154 per week during petitioner's rehabilitation program for "up to 90 days." The consultant added not only that "it would appear appropriate to suspend further rehabilitation activities at that time [90 days hence]," but also that "Mr. Rohrback is, of course, entitled to receive temporary disability benefits during his involvement in the rehabilitation process until it has been concluded." During the 90-day period (ending December 26, 1978), and moreover for approximatately 8 months thereafter, EBIC paid petitioner at the $154 per week rate. Then, in August, 1979, EBIC formally requested termination of rehabilitation benefits, retroactive to December 26, 1978. The rehabilitation consultant, finding that further rehabilitation efforts "would not be productive or appropriate at this time," suspended temporary benefits on August 17, 1979, without any reference to retroactivity.

EBIC never directly contested this ruling, though the $154 weekly amount was $84 greater than the amount for which EBIC would otherwise have been obligated in the form of retroactive benefits for *permanent* disability in the ultimate award.[4] Instead, EBIC argued in the hearings on permanent disability compensation that in the final award it should recover a credit of

---

[4]See section 4650, which reads: "If an injury causes temporary disability, a disability payment shall be made for one week in advance as wages on the *fourth* day after the injured employee leaves work as a result of the injury; provided, that in case the injury causes disability of more than *21* days or necessitates hospitalization the disability payment shall be made from the first day the injured employee leaves work or is hospitalized as result of the injury. If the injury causes permanent disability, a disability payment shall be made for one week in advance as wages on the *fourth* day after the injury becomes permanent or the date of last payment for temporary disability, whichever date first occurs." (Italics added.)

$84 per week for all the weeks between December 26, 1978, and August 17, 1979.[5]

On June 16, 1980, the workers' compensation judge (judge) issued his findings and award. The relevant finding was that "[d]efendants are entitled to credit for overpayment of temporary disability indemnity *in an amount to be adjusted by the parties . . . .*" (Italics added.) The relevant portion of the award read: ". . . [p]ermanent disability indemnity of [$33,547.50] payable at $70 per week beginning 12/5/78 *and not less than twice each calendar month* thereafter until paid in full, . . . less credit for overpayment of temporary disability indemnity *in an amount to be adjusted by the parties* for the period from 12/2/78 [*sic*] through 8/17/79. . . ." (Italics added.)

Petitioner requested reconsideration by the board, and in due course, on July 21, 1980, the judge made his report to the board, and served it on the parties. Inter alia, the report said: "[T]he fact that such credit was to be in an amount to be adjusted by the parties *clearly infers* [*sic*] that if the parties cannot agree *the matter must be back before the Board* to make a decision on the proper amount." (Italics added.)

In the interim, however, EBIC took unilateral action. The insurance carrier sent petitioner a letter, dated July 9, 1980, reciting (1) that it calculated a credit of $2,242.90, (2) that this amount would be credited at the rate of $70 per week until satisfied, and, therefore, (3) petitioner would receive his first actual payment in February, 1981.

Petitioner's counsel immediately sent to EBIC's counsel a letter protesting the unilateral action and threatening to move for penalties under section 5814 if payments were not initiated within ten days. EBIC's counsel replied with a terse letter making reference to the carrier's July 9 letter, clearly implying that EBIC absolutely maintained the position stated in that letter.[6]

---

[5]Eventually, the board found that EBIC was not entitled to any such credit, mainly because EBIC had failed to contest the issue in the proper manner; i.e., by challenging the rehabilitation consultant's order of August 17. Instead, EBIC had introduced the issue in a different setting without making it clear that the issue had already been resolved adversely to EBIC by the consultant.

The board's ultimate finding on the credit issue is not before this court, and we do not review it. We are not concerned here with EBIC's *entitlement* to the credit, but rather with the justification for EBIC's *belief*, and the propriety of its conduct based upon that belief, that the credit was due immediately when the award of permanent disability indemnity was made.

[6]In February, 1981, instead of reinstituting payments as promised, EBIC sent to petitioner another letter. Without apology or even acknowledgement of error, the letter recited that the credit had now grown to $3,012, and therefore the first payment would be forwarded on May 4, 1981.

Petitioner thereupon moved for imposition of the section 5814 penalty. The judge initially granted the motion. However, EBIC petitioned for reconsideration, arguing in essence that the *Kerley* doctrine contemplates within its protection from penalties a doubt as to whether *present payments* are due, when despite the employer's conceded liability for compensation, the employer also believes it is entitled to a credit. Since EBIC doubted whether present payments were due, it argued, it doubted whether it was "liable" for payments.

In his following report to the board, the judge accepted EBIC's reasoning, and reversed his former position. The board likewise accepted EBIC's argument, and ordered the penalty stricken. It is for relief from this order that petitioner has come to this court.

### III.

We examine *Kerley* and conclude that it does not support EBIC's position.

"[T]he only satisfactory excuse for delay in payment of disability benefits, whether prior to or subsequent to an award, is genuine doubt from a medical or legal standpoint as to liability for benefits, and . . . the burden is on the employer or his carrier to present substantial evidence on which a finding of such doubt may be based." (*Kerley* v. *Workmen's Comp. App. Bd., supra,* 4 Cal.3d, 223, 230.) [¶] The cardinal rule as quoted leaves little room to doubt that "liability" is intended in the statutory, or common, sense; the remainder of *Kerley* removes all doubt. The court noted that its review of case law revealed that only where "there was substantial doubt as to whether *any* liability existed" (*id.,* at p. 230, fn. 9; italics in original) has a penalty award been annulled. It noted that a dispute as to extent of liability "is obviously no reason to withhold any advances" (*id.,* at p. 227, fn. 5), because the employer can get a hearing on the disputed issue "without *prejudicial* delay in virtually every case except those in which the employer has good cause to believe that there is clearly *no permanent disability.*" (*Id.,* at p. 227, fn. 5; italics added.)

Also, the *Kerley* court equated undisputed evidence of an industrial injury which caused a condition not subject to improvement, with "no evidence whatever to sustain" a finding of genuine doubt from a medical or legal standpoint as to liability. (*Id.,* at pp. 229-230.) [¶] The doubt professed by EBIC in this case does not reasonably fit within the narrow exception intended by the *Kerley* court.

To whatever extent EBIC's position actually is that there was no delay in payments, we reject it. EBIC's unilateral action was a direct statutory vio-

lation. Sections 4650 (see fn. 4, *ante*, p. 899) and 4651 provide, respectively, that "a [permanent] disability payment shall be made" on the fourth day after the injury is permanent or temporary benefits have stopped, and that the payments "shall thereafter be made not less frequently than twice in each calendar month, unless otherwise ordered by the appeals board." Given liability in the general sense, sections 4650 and 4651 impose a mandatory duty on the employer.

EBIC suggests that the proper step was for petitioner to move, under section 5100, for a lump sum payment and an order as to time of its payment. But under section 5100, *either* party may so move; obviously, in this instance the only relevance of section 5100 is that it provided one of many mechanisms available to *EBIC* as a means to resolve the dilemma it perceived between its manifest statutory duty to pay petitioner and the asserted privilege of recovering the credit "up front."

In seeking to protect what it viewed as an overpayment, EBIC could have sought either: 1) a definitive ruling by the judge as part of his June 16, 1980, findings and award; 2) an adjustment of the amount with petitioner promptly upon the making of the award containing the "to be adjusted by the parties" provision; or 3) a further hearing for determination of that issue by the judge.

Instead, EBIC chose to act unilaterally and to withhold all payments. We conclude that in terms of section 5814, it was "unreasonabl[e]" for EBIC to construe the judge's order, and his subsequent report discussing that order, as permitting a unilateral termination of payments. The order plainly implied that the parties should attempt to resolve the issue of the credit, since years of payments could be made before the credit would be in any jeopardy; and that, if they failed to resolve the issue, the parties should return to the judge or the board for directions. There is no other reasonable interpretation of the order.

Thus, another answer to EBIC's contention that it had a "genuine doubt" as to whether the credit could be recovered as an offset against the first payments in toto, is that the order itself, to the contrary, left no room for reasonable doubt on this subject.

We hold that there was no evidence whatsoever to support the board's finding that EBIC, when it withheld payments from petitioner, had a genuine doubt from a legal standpoint as to its liability for benefits. (§ 5952, subd. (d); *Kerley* v. *Workmen's Comp. App. Bd.*, *supra*, 4 Cal.3d 223, 230.) EBIC's unilateral withholding of payments plainly violated both the Labor Code and the order to which EBIC was subject.

The award dated June 3, 1981, is annulled and the case is remanded with directions to enter a new award, in the same principal amount, with an additional penalty of 10 percent of the total amount of permanent disability benefits awarded. (Cf. *Gallamore* v. *Workers' Comp. Appeals Bd.* (1979) 23 Cal.3d 815, 824-826 [153 Cal.Rptr. 590, 591 P.2d 1242].) The award shall, to the extent necessary, specify that any of such sum as may previously have accrued and remains due and unpaid to petitioner under the terms of the June 3, 1981, order shall be paid in full within 10 days. We do not decide the amount nor the timing and manner of recognition of any overpayment to which EBIC may have been entitled, inasmuch as that issue is not before this court. (See *Kerley* v. *Workmen's Comp. App. Bd., supra,* 4 Cal.3d 223, 227, fn. 5.)

Racanelli, P. J., and Newsom, J., concurred.