[No. B137562. Second Dist., Div. Four. July 13, 2000.]

ALBERT RUCKER, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and COUNTY OF
LOS ANGELES, Respondents.

COUNSEL

William S. Lindheim and Fred L. Fong for Petitioner.

No appearance for Respondent Workers' Compensation Appeals Board.

Wills & Kliger and Jay H. Harris for Respondent County of Los Angeles.

OPINION

**HASTINGS, J.**—Injured employee, Alberta Rucker, seeks review of an order of the Workers' Compensation Appeals Board (Board), denying her demand for advances against permanent disability (PDA), as permitted under Labor Code section 139.5, subdivision (d), and a penalty due to the employer's failure to pay it, pursuant to Labor Code section 5814.[1] We agree that the Board should have granted her petition for reconsideration, that she established that she was entitled to PDA, and that respondent failed to meet its burden to prove that its failure to pay the additional amount under section 139.5, subdivision (d) was reasonable.[2]

BACKGROUND

We begin by summarizing the relevant facts in the record of proceedings, which has been reproduced entirely from the Board's file.[3]

In 1991, petitioner, an employee of respondent, County of Los Angeles, suffered an industrial injury, which caused a 50 percent permanent disability. On December 5, 1995, the parties stipulated to an award of $35,668, payable at $148 per week beginning October 18, 1994. On May 8, 1996, petitioner filed an appeal to the Board of the denial of her claim for vocational rehabilitation maintenance allowance (VRMA), plus penalties, interest, and attorney fees for respondent's failure to provide notification in compliance with Labor Code section 4636, subdivision (a). A mandatory settlement

---

[1]Section 139.5, subdivision (d) provides, in part, the following formula for computing the amount of the maintenance allowance due under subdivision (c): "(1) The amount the employee would have received as continuing temporary disability indemnity, but not more than two hundred forty-six dollars ($246) a week for injuries occurring on or after January 1, 1990. [¶] (2) At the employee's option, an additional amount from permanent disability indemnity due or payable, sufficient to provide the employee with a maintenance allowance equal to two-thirds of the employee's average weekly earnings at the date of injury. . . ."

[2]Whenever we refer to "respondent," we refer to the employer, which was the only respondent to file an answer.

[3]Any minor inaccuracies or omissions are due to the difficulty of deciphering the Board's minutes, which are mostly handwritten in a hurried-looking cursive.

conference was held on August 16, 1996. By notice dated August 22, 1996, trial was scheduled for December 20, 1996, before Workers' Compensation Judge (WCJ) Marilyn Ward.

On November 21, 1996, petitioner's attorney, Edward Singer, wrote to the court, requesting that two new issues be addressed at trial. He wrote, "First, no PD supplement has been paid as was requested by Applicant 3/14/96. Beyond the date of the MSC and continuing, this request has not been complied with. [¶] Second, on or about 9/23/96, while the Applicant's rehabilitation services were interrupted due to her surgery, Defendant failed to convert over to pay PD indemnity to Applicant as indicated in the Award. To this date, Applicant has not received that PD indemnity."[4] A "cc" notation at the bottom of the letter indicates that a copy was sent to respondent's attorney, Richard Brennan.

On December 20, 1996, the parties stipulated to an order resolving all penalty issues, except with regard to the payment of "VRMA" from October 18, 1994 to September 10, 1995.[5] The parties were given 60 days to submit memoranda of points and authorities. Petitioner's memorandum of points and authorities discussed only her right to VRMA payments, and not PDA. The matter was submitted, and on March 12, 1997, the court ordered respondent to pay petitioner VRMA for the disputed period, and attorney fees.

Respondent filed a petition to reconsider the order, and on April 10, 1997, the court granted the petition and set the matter for trial. Trial was continued or taken off calendar a number of times for various reasons. On July 18, 1997, the court issued a notice of intent to allow VRMA for the disputed period of October 18, 1994 to September 10, 1995. Respondent did not object to the tentative order, and it became final on August 7, 1997, leaving penalties as the remaining issue for trial.

PDA was once again brought up in a settlement conference held on May 25, 1999, before WCJ Ward. Handwritten on the minutes of that conference, under the preprinted heading, "Other issues," are the following notes: "Penalty: Applicant has been paid either PD or VRMA as indicated on [defendant's] Exhibit 1. Applicant was not paid PD and VR simultaneously. Applicant asserts that interuption [sic] of PD after stipulated award is improper

---

[4]"MSC" stands for mandatory settlement conference. We interpret "PD supplement" as the portion of permanent disability paid in addition to maintenance allowance provided under Labor Code section 139.5, subdivision (d)(2), to which we refer as PDA. "PD indemnity" means permanent disability benefit payments. (See *Western Growers Ins. Co. v. Workers' Comp. Appeals Bd.* (1993) 16 Cal.App.4th 227, 235-236 [20 Cal.Rptr.2d 26]; Lab. Code, §§ 4453, subd. (b), 4658.)

[5]"VRMA" stands for "vocational rehabilitation maintenance allowance." (See Lab. Code, § 139.5, subd. (c).)

warranting a penalty. Defendant asserts this was not improper under *Tangye* 43 CCC 3." Exhibit 1 was a letter dated May 21, 1999, showing a breakdown of all PD and VRMA payments.

The matter finally went to trial on July 27, 1999. The parties each submitted a memorandum of points and authorities addressing the issue, and the reasonableness of respondent's reliance on *Tangye v. Henry Beck & Co.* (1978) 43 Cal.Comp.Cases 3 (which we shall discuss within). Respondent admitted that it had paid petitioner either PD and VRMA at separate times, but never both simultaneously, and implied, but did not directly state, that it did so in reliance on *Tangye*. Respondent asserted that its reliance on *Tangye* was not unreasonable, even if the WCJ were to find it not to be controlling.

The matter was taken under submission, and on August 13, 1999, the WCJ issued an order denying penalties, upon finding that petitioner had failed to sustain her burden of proof. Although she found *Tangye* distinguishable, she did not consider respondent's reliance on it to have been unreasonable. Petitioner filed a petition for reconsideration, contending that the denial of penalties was not supported by the evidence, and pointing out that the WCJ had omitted an order for the unpaid PDA, even though respondent had admitted that it did not pay *any* PD during the disputed period. Respondent filed no opposition to the petition.

On September 1, 1999, in response to the petition for reconsideration, and without further hearing, the WCJ issued a modified order and findings. The WCJ found that the payment of PDA under Labor Code section 139.5, subdivision (d)(2), was not in issue, because petitioner had failed to raise it, and included the following new finding: "[T]here is no evidence in the Board file and none was presented by way of exhibit or otherwise indicating that the applicant formerly requested the PD advances in addition to the VRMA. The WCJ cannot make the assumption that she made this request in proper form." The WCJ also expanded her finding of the reasonableness of respondent's reliance on *Tangye*, explaining, "Defendant is entitled to rely on *Tangye* even if incorrect. There is no additional case law on this specific subject."

Petitioner filed another petition for reconsideration. As an exhibit to the petition, she included a copy of the letter dated November 21, 1996, from her then counsel, Mr. Singer, to WCJ Ward, in which Mr. Singer stated, "[N]o PD supplement has been paid as was requested by Applicant 3/14/96." Petitioner also attached copies of a handwritten memorandum of "Conference Agreements," prepared by the State Office of Benefit Determination, signed by petitioner, petitioner's attorney, and respondent's attorney on

December 17, 1997. In the memorandum, respondent's attorney, Mr. Brennan, agreed to inquire as to the issuance of VRMA benefits *and* permanent disability payments for the period of October 18, 1994, to September 10, 1995.

Respondent filed an "Answer to Petition for Reconsideration," which consisted of the verified statement of respondent's attorney, Jay Harris, and argument.[6] Mr. Harris stated that during the mandatory settlement conference of March 9, 1999, permanent disability supplements were not discussed, and that the issue of PDA was never raised at trial.

The WCJ recommended denial of the petition for reconsideration, and on November 3, 1999, the Board denied it. On December 16, 1999, petitioner filed her petition for writ of review, which we granted on February 2, 2000.

## DISCUSSION

Petitioner contends that the WCJ erred in her first order when she failed to award PDA and penalties, and again when she recommended denial of reconsideration, finding that there was no evidence of her having requested PDA. Petitioner relies on our opinion in *Tyler v. Workers' Comp. Appeals Bd.* (1997) 56 Cal.App.4th 389 [65 Cal.Rptr.2d 431], where we held that under the circumstances, due process required the development of the evidentiary record to enable a complete adjudication of the issues. (See *id.* at pp. 393-395.) Petitioner contends that the WCJ had a similar duty to develop the record, by ordering further evidence on the issue of her request for PDA.

Respondent counters with *San Bernardino Community Hospital v. Workers' Comp. Appeals Bd.* (1999) 74 Cal.App.4th 928 [88 Cal.Rptr.2d 516], in which Division Two of the Fourth Appellate District refused to extend the reasoning of *Tyler* to reverse a refusal to permit the introduction at trial of evidence which had not been disclosed at the time of the mandatory settlement conference, without a showing that the evidence was unavailable earlier, or that it could not have been discovered in the exercise of due diligence. (74 Cal.App.4th at p. 936.)

Neither *Tyler* nor *San Bernardino* can resolve the due process issue in this case, which is not the result of the WCJ's failure to *develop* the record with evidence necessary to a complete adjudication of the issues, but, as we shall explain, was the result of a failure to *read* the record prior to rendering a

---

[6]Mr. Brennan *stopped* appearing on behalf of respondent sometime in 1998. Respondent was represented at trial and with regard to petitioner's petitions for reconsideration by Mr. Harris, of the same law firm, Wills & Kliger, who also appears here for respondent.

decision that resolved an issue raised on the WCJ's own initiative, without affording the parties an opportunity to be heard.

Contained in the WCJ's own file was the letter from petitioner's attorney, dated November 21, 1996, addressed to the WCJ, with a copy to respondent's attorney, requesting that the WCJ address the issue of PDA "requested by Applicant 3/14/96." The issue was not addressed on July 18, 1997, when the court ordered payment of VRMA for the disputed period in 1994 and 1995. Petitioner brought the subject up again on May 25, 1999, in a settlement conference before the WCJ, in the presence of opposing counsel.

At trial, respondent admitted not having paid any PD. Since PDA is a portion of PD, this is tantamount to an admission that it did not pay PDA. Respondent's objection to penalties was not that petitioner had failed to request PDA, but that it did not do so because it relied upon *Tangye v. Henry Beck & Co., supra,* 43 Cal.Comp.Cases 3. Respondent's position could reasonably be construed as a tacit admission that petitioner had, in fact, requested PDA. This inference is supported by the fact that the parties tried the case as though there had been a request. It is further supported by evidence provided with the second petition for reconsideration, including the handwritten memorandum of "Conference Agreements," prepared by the State Office of Benefit Determination, signed by respondent's attorney, Mr. Brennan, on December 17, 1997, in which he agreed to inquire as to the issuance of VRMA benefits *and* permanent disability payments for the period of October 18, 1994 to September 10, 1995. Since the only permanent disability payable for that period was PDA, it is reasonable to infer that respondent meant to inquire as to the issuance of PDA, in addition to VRMA.[7]

Thus, the trial proceeded on a completely different excuse for nonpayment. A WCJ may not resolve an unaddressed issue without first affording the parties an opportunity to offer rebuttal. (See *Kuykendall v. Workers' Comp. Appeals Bd.* (2000) 79 Cal.App.4th 396, 399 [94 Cal.Rptr.2d 130].) The improper restriction on the right to present evidence in rebuttal is a deprivation of the constitutional guaranty of due process of law. (*Pence v. Industrial Acc. Com.* (1965) 63 Cal.2d 48, 50-51 [45 Cal.Rptr. 12, 403 P.2d 140].)

■ The Board " 'is bound by the due process clause of the Fourteenth Amendment to the United States Constitution to give the parties before it a

---

[7]Respondent continues to argue that petitioner was required to produce evidence that she had requested PDA. Hopefully, this is a result of Mr. Harris's failure to review the files of the previously assigned attorney, Mr. Brennan, and not an attempt to mislead the court.

fair and open hearing. "The right to such a hearing is one of 'the rudiments of fair play' [citation] assured to every litigant by the Fourteenth Amendment as a minimal requirement." [Citations.] [¶] The reasonable opportunity to meet and rebut the evidence produced by his opponent is generally recognized as one of the essentials of these minimal requirements [citations], and the right of cross-examination has frequently been referred to as another [citations]. [¶] . . . [¶] "All parties must be fully apprised of the evidence submitted or to be considered, and must be given opportunity to cross-examine witnesses, to inspect documents and to offer evidence in explanation or rebuttal. In no other way can a party maintain its rights or make its defense." ' " (*Kaiser Co. v. Industrial Acc. Com.* (1952) 109 Cal.App.2d 54, 58 [240 P.2d 57].)

 The Board has the power to amend its decision on the basis of the evidence previously submitted, but only after fully apprising the parties of the evidence to be considered. (See *Fidelity & Cas. Co. of New York v. Workers' Comp. Appeals Bd.* (1980) 103 Cal.App.3d 1001, 1011, 1014-1015 [163 Cal.Rptr. 339]; Lab. Code, §§ 5701, 5906.) Thus, the amended decision of the WCJ resulted in a denial of petitioner's due process, and must be reversed. (See *Beverly Hills Multispecialty Group, Inc. v. Workers' Comp. Appeals Bd.* (1994) 26 Cal.App.4th 789, 806 [32 Cal.Rptr.2d 293].) The second petition for reconsideration should have been granted, since it demonstrated a denial of due process.

Respondent contends that the WCJ was nevertheless correct in denying PDA, and that its reliance on *Tangye v. Henry Beck & Co., supra,* 43 Cal.Comp.Cases 3, was not unreasonable, making penalties unjustified. Respondent again relies on *Tangye,* suggesting that it is still valid authority, because petitioner has failed to cite authority to the contrary. We disagree. Petitioner has cited Labor Code section 139.5, subdivision (d), which, as amended in 1989, had the effect of abrogating *Tangye* in cases where PDA has been requested.

Prior to 1990, subdivision (c) of section 139.5 provided: "When a qualified injured workman chooses to enroll in a rehabilitation program, he shall continue to receive temporary disability indemnity payments, plus additional living expenses necessitated by the rehabilitation program, together with all reasonable and necessary vocational training, at the expense of the employer or the insurance carrier, as the case may be." (Stats. 1976, ch. 428, § 1, p. 1094.) In *Tangye,* the board held that if the employee's disability becomes permanent while enrolled in a rehabilitation program, he will be entitled only to temporary disability indemnity payments until after completion of the program, and in no event may he receive both temporary and permanent

disability payments. (See *Shasta Convalescent Hospital v. Workers' Comp. Appeals Bd.* (1982) 132 Cal.App.3d 997, 1002 [183 Cal.Rptr. 602], citing *Tangye v. Henry Beck & Co., supra,* 43 Cal.Comp.Cases at p. 7.)

Respondent contends that *Tangye* is still valid authority for the rule that an employee may not receive both temporary and permanent disability indemnity payments at the same time, suggesting that payment of VRMA and PDA would amount to such a prohibited payment. That prohibition is meaningless here, since VRMA is not temporary disability. (*Kopitske v. Workers' Comp. Appeals Bd.* (1999) 74 Cal.App.4th 623, 633 [88 Cal.Rptr.2d 216]; *Edgar v. Workers' Comp. Appeals Bd.* (1998) 65 Cal.App.4th 1, 10-11 [76 Cal.Rptr.2d 83]; but see *Ritchie v. Workers' Comp. Appeals Bd.* (1994) 24 Cal.App.4th 1174, 1181-1182 [29 Cal.Rptr.2d 722] [VRMA may be treated as a form of temporary disability for purposes of Lab. Code, §§ 4850 & 4853].)

Respondent proffered no evidence at trial to justify its reliance on authority which had been outdated for more than four years at the time the PDA was first requested, and nearly ten years at the time of trial. It is the employer's burden to establish that it had a genuine doubt as to its liability for the benefits which it failed to pay. (*Kerley v. Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 223, 227 [93 Cal.Rptr. 192, 481 P.2d 200].) A determination of the reasonableness of a delay in payment must be based upon facts. (Lab. Code, § 5814.) Respondent's mere assertion that it relied upon *Tangye,* and that its reliance was reasonable, whether or not *Tangye* was still controlling, was not evidence of facts, and not sufficient to meet its burden to establish the reasonableness of its delay in payment of PDA.

## DISPOSITION

The order of the Board denying PDA and penalties is annulled and the matter is remanded for further proceedings consistent with this opinion.

Vogel (C. S.), P. J., and Epstein, J., concurred.