[Civ. No. 53439. Second Dist., Div. Two. Nov. 16, 1978.]

KATHRYN KAMPNER et al., Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD
and HOLIDAY INN, INC., Respondents.

**COUNSEL**

Geffner & Satzman and Barry Satzman for Petitioners.

Zonni, Ginocchio & Taylor and Leonard J. Silberman for Respondents.

**OPINION**

**COMPTON, J.**—Petitioners Kathryn Kampner and Thomas Joseph Kampner contend that the board erred in annulling the assessment of a

10 percent penalty, pursuant to Labor Code section 5814, against respondent Holiday Inn, Inc. (Holiday Inn) for delay in paying the proceeds of a settlement between petitioners and Holiday Inn.[1]

## I. *Summary of Proceedings Before the Appeals Board*

Petitioners Kathryn Kampner and Thomas Joseph Kampner are respectively the widow and son of Thomas Kampner, deceased. In February 1975, petitioners filed with the appeals board an application for adjudication of claim for death benefits (see Lab. Code, § 4700 et seq.) which alleged that Thomas Kampner while employed from 1969 to October 11, 1974, by respondent Holiday Inn sustained injury arising out of and occurring in the course of his employment which resulted in his death.

The matter came to hearing on November 16, 1976, and petitioners and Holiday Inn entered into a proposed compromise and release for $20,000 less liens and attorneys' fees. On the same date the parties submitted the settlement for approval by the appeals board.[2] On November 18, 1976, the appeals board issued an order approving compromise and release (hereinafter Order) which allowed all·liens in full and attorneys' fees as requested.

The attorneys for R. L. Kautz & Company (R. L. Kautz), which is Holiday Inn's workers' compensation claim adjusting agency, received the Order on November 19, 1976. The attorneys forwarded the Order to R. L. Kautz on November 30, 1976, which is six working days after the attorneys received it (the Thanksgiving holiday weekend occurred during this period and the attorneys' office was closed from November 25 through the weekend ending November 28). R. L. Kautz received the Order on December 2, 1976, and the claims examiner who handled the claim received the Order on December 8, 1976. (We note that Dec. 4 and 5 were the weekend.) Eight separate checks had to be prepared for payment directly to petitioners, their attorneys and the lien claimants. All the checks were issued on December 15, 1976, but petitioners' check was initially mailed to the wrong address; there is no indication, however, how long petitioners receipt of the check was delayed by being mailed to the wrong address.

---

[1] We initially denied the petition for writ of review. However, on petition for hearing the Supreme Court granted review and transferred the matter to this court with instructions to issue a writ of review.

[2] *No compromise and release is valid unless it is approved by the appeals board.* (Lab. Code, § 5001.)

Petitioners then requested a 10 percent penalty pursuant to Labor Code section 5814[3] be assessed against Holiday Inn for an unreasonable delay in payment of the settlement after approval by the judge.

At the hearing on the penalty the claims adjuster responsible for this claim explained that December is a very busy month since there are many settlements and requests for permanent disability advances during the end of the year holiday season, and there was also a slight backlog due to R. L. Kautz being closed for the Thanksgiving holiday weekend.

The workers' compensation judge held that a penalty was appropriate and issued an award dated March 31, 1977, for a 10 percent penalty against Holiday Inn.

The judge in his report on petition for reconsideration explained his assessment of the penalty as follows:

". . . The evidence introduced at the hearing of March 29, 1977 showed that the Defendants paid the Compromise and Release by checks dated December 15, 1976, and even then the check to the Applicant was mailed to the wrong address.

"In *Pascoe vs. WCAB,* [46 Cal.App.3d 146] 40 CCC 191, it was held that on a claim of unreasonable delay in payment of benefits, the burden is on the employer or its insured to present substantial evidence showing satisfactory excuse for the delay in payment of disability benefits. In the case before us, the Defendants did not present any satisfactory excuse for the delay and the sole explanation given was the holiday season and the work load of the claims adjuster. On the basis of such evidence, we felt compelled to conclude that the delay in the payment of the funds provided by the Compromise and Release was unreasonable."

Holiday Inn sought reconsideration, contending the judge erred in assessing the penalty.

A majority of the three-member board panel agreed with Holiday Inn and annulled the penalty, stating in part:

---

[3]Labor Code section 5814 provides in pertinent part: "When payment of compensation has been delayed or refused, either prior to or subsequent to the issuance of an award, the full amount of the order, decision or award shall be increased by 10 percent. The question of delay and the reasonableness of the cause therefor shall be determined by the appeals board in accordance with the facts. . . ."

"The Board notes that Labor Code Section 5814 refers to payment which has been 'unreasonably delayed'. We believe the term 'unreasonably' implies something more than a mere lack of a high degree of diligence. In fact it would appear to us to imply something less than ordinary diligence. There is no question on this record that defendant did not act promptly. However under the statute there must be something more than this—there must be an unreasonable delay.

"In this case we are not satisfied that the delay in payment was unreasonable. It is inevitable that delays of a few days will occur at the points at which responsibility for different functions must be passed along. This becomes unreasonable only when the delays are excessive. It is also inevitable that in a large scale organization, the press of other business will mean that a matter will not be acted on immediately upon receipt. Here also delays become 'unreasonable' for purposes of Labor Code Section 5814 only when they are excessive. The record before us however contains no substantial evidence that the delays here were excessive in relation to what delays would have occurred in the normal course of business. Nor is there any basis for us to conclude even without such evidence, that the delays here were excessive. Since there is no basis for the Board to conclude that defendant's conduct was so far beyond ordinary diligence to represent an unreasonable delay, the penalty award will be rescinded.

". . . . In this case then the Board is required to determine whether the delay here was egregious in the light of the legitimate needs of administering workers' compensation insurance. Measured by this criterion, the evidence as described above, fails to establish a delay of sufficient duration to be described as unreasonable."

Petitioners, now being newly aggrieved, sought reconsideration by the board. Denying petitioners' request for reconsideration the majority of the panel stated: "[Labor Code section 5814] on its face contemplates that a certain amount of discretion lies with the Board in determining whether a delay is or is not reasonable. The statute implies that the Board is to consider the totality of the circumstances. This belies the contention that there exists a fixed point at which a delay is *per se* unreasonable. Thus, under certain circumstances a 26 day delay may be within the realm of reasonableness while under other circumstances it may be unreasonable.

"The fact that the Board is given discretion to determine the extent of a delay, implies that the Board is to evaluate the delay against some external frame of reference. The most logical frame of reference, is what

is reasonable in the light of what can be expected to occur in the normal course of business. This is the standard that the Board used in its earlier decision.

"We do not understand *Kerley v. WCAB* 4 C.3d 223, 93 CR 192, 36 CCC 152 to hold that the Board is precluded from determining whether the length of a delay was unreasonable. *Kerley* involved a situation in which the carrier delayed furnishing benefits for at least 6 months (the opinions of the Supreme Court and of the Board do not state when the carrier first made permanent disability payments, however, the carrier apparently did not make any payments, nor did it make any effort to make payments from December 1, 1968 to at least June 10, 1969.) The Court in *Kerley* discussed the justification for the penalty in terms of uncontradicted medical evidence warranting an advance of some permanent disability. The Court, however, did not discuss the issue of what guidelines the Board is to use in determining whether a delay is in fact excessive, presumably because in *Kerley* there could be no question that the more than 6 month delay in failing to furnish benefits was unreasonable under any conceivable standard by which a reasonable time is to be measured. Thus, it is clear that in *Kerley,* the Court did not have before it a situation in which the Board determined that a delay was not excessive in length; rather the case deals with a situation in which no reasonable ground was given as justification for a clearly excessive delay. Thus, the case is inapposite to the situation presently before the Board.

"Moreover, if attention is given to the precise language used by the Court in *Kerley* it is noted that the Court stated the following: '. . . the only satisfactory excuse for delay in payment of disability benefits, whether prior to or subsequent to an award, is genuine doubt from a medical or legal standpoint as to liability for benefits.' [*Kerley, supra,* 4 Cal.3d at p. 230.]

"The opinion then is phrased in terms of what is the permissible justification for a delay. This language in no way suggests that the Board does not have discretion to determine the threshold question of whether there has been a 'delay.' Since the Board then must preliminarily determine whether a 'delay' occurred, it must have some standard by which to measure 'delays' to determine whether such delays are 'unreasonable.'

"We have some difficulty in understanding applicant's [i.e. petitioners'] emphasis on the argument that even an inadvertent delay can justify a penalty. Nothing in our prior decision disputes this. The fact that an

inadvertent delay can justify a penalty does not mean that any delay resulting from inadvertence requires the imposition of a penalty. Instead as we have stated above, the issue of whether a delay was reasonable depends on a multitude of factors. Even an inadvertent delay for an unreasonable period of time will justify the award of a penalty. However, in the previous decision, we determined that the delay was not for an unreasonable period of time.

"Applicant's citation as authority, another panel decision which held that a 26 day delay was unreasonable (*County of San Diego v. WCAB (Buckles)* 42 CCC 659 (writ denied) is not persuasive. To repeat again what we have stated before, whether a delay is reasonable or unreasonable depends on more than the number of days payment was delayed. Many factors are to be considered. Thus, a holding that a delay of a fixed number of days is *per se* unreasonable, would be arbitrary and unjust. In fact, in *Kombrink v. WCAB,* 41 CCC 480 (writ denied, Hearing denied), a 27 day delay was held to be not unreasonable.

". . . . The Board has repeatedly refused to apply penalties where it has found the delay not to have been unreasonable under all the circumstances. See e.g., *Wendelton v. WCAB,* 42 CCC 986 (writ denied; Hearing denied); *Kombrink v. WCAB* 41 CCC 580 (1976) (writ denied, Hearing denied); *Holloway v. WCAB* 41 CCC 448 (1976) (writ denied); *Adams v. WCAB* 37 CCC 674 (1972) (writ denied); *Hancock v. WCAB* 37 CCC 518 (1972) (writ denied, Hearing denied); *Belt v. WCAB* 36 CCC 466 (1971) (writ denied); *Manning v. WCAB* 36 CCC 203 (1971) (writ denied).

"Additionally, applicant contends that the Board 'went on to state that it is necessary to show that a delay had an effect on the applicant' and that the Board determined 'that a penalty may only be assessed in the event an applicant is harmed by the delay.' The part of the decision to which applicant apparently refers actually states: 'In determining the issue of responsibility, the Board notes that at the hearing held on the penalty issue, no evidence was submitted as to what effect the delay had on applicant. Absent such evidence, the Board has no other criterion to measure reasonability other than what it considers to be the limits of reasonable administrative processing time. In this case then the Board is required to determine whether the delay here was egregious in the light of the legitimate needs of administering workers' compensation insurance.'

"Applicant's attorney has inadvertently misinterpreted our opinion. A more careful review of the decision would have made it clear that the Board did not hold that it is necessary to show that a delay had an effect on applicant. This is self-evident from the decision.

"Applicant further argues that two delays were present here—the second one involved the sending of the check to the wrong address. However, at no time did counsel inform the Board as to the extent of delay resulting from this. Without knowing the amount of time involved, the Board has no way of determining whether the additional delay resulted in a total delay that was for an unreasonable period."

## II. *Discussion*

■ With minor qualifications, we find agreement with the analysis of the majority board opinion.

We observe that the parties have not referred to nor has the court found any statutory provisions specifying the number of days after the issuance of an order approving compromise and release that the settlement proceeds must be paid. Further, nothing in the settlement papers executed by the parties indicates that there was an agreement as to when settlement proceeds were to be paid.[4] Thus, "[t]he question of delay and the reasonableness of the cause therefor shall be determined by the appeals board in accordance with the facts. . . ." (Lab. Code, § 5814.)[5]

Here, the board analyzed the question of unreasonableness of the delay in terms of the appropriate standard of conduct for the diligent processing of an order approving settlement. We do not construe the board to mean that the time period for payment was merely not unreasonable since it was typical of the usual payment procedure followed by most employers and carriers—the standard of practice established by employers and carriers might indeed not be reasonable. Rather here the board measured the delays involved against its under-standing of how long the procedure should have taken.

---

[4]Certainly the parties could have agreed as to within what period the settlement proceeds were to be paid and requested that the judge specifically include such time period for payment as part of the order approving the settlement.

[5]Holiday Inn nowhere argues that payment of the settlement was withheld because a justifiable concern existed that an aggrieved person might petition the board for reconsideration of the Order.

We also do not interpret the board to hold that a shortage of personnel or heavy workload at the employer or carrier with regard to the adjusting of workers' compensation claims excuses a delay in payment. While such conditions explain a delay, they do not make the delay reasonable.

Further, while the board states the question of delay in some respects "discretionary," the tenor of the board's opinion does not use "discretionary" here in the same sense that continuances of hearings and appointment of independent medical examiners are discretionary. If a delay has been unreasonable, a penalty *must* be assessed—the board has no choice in the matter. Rather it is obvious by "discretionary" the board means that a delay of a certain number of days does not per se make a delay unreasonable but instead each case must be judged on its own facts as to whether the delay was reasonable or not.

As to the mailing of petitioners' check to the wrong address, as the board notes, petitioners presented no evidence to demonstrate the length of the delay resulting. Accordingly, lacking this vital information from petitioners the board could not judge if this particular error resulted in an unreasonable delay. The mere mailing of the check to the wrong address does not per se require a penalty.

Accordingly, the board's annulment of the penalty is affirmed.

Roth, P. J., and Beach, J., concurred.

Petitioners' application for a hearing by the Supreme Court was denied January 11, 1979. Bird, C. J., was of the opinion that the application should be granted.