[No. S058909. Aug. 20, 1998.]

STATE COMPENSATION INSURANCE FUND, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and ADRIENNE
STUART, Respondents.

COUNSEL

Krimen, Da Silva, Daneri, Bloom & Landsiedel and Louis Harris for Petitioner.

Dennis J. Hershewe, Nancy N. McDonough, Carl G. Borden, Finnegan, Marks & Hampton, Michael A. Marks, Ellen Sims Langille, Horvitz & Levy, Frederic D. Cohen and Christina J. Imre as Amici Curiae on behalf of Petitioner.

Goldfarb & Zeidner and Jack M. Goldfarb for Respondent Adrienne Stuart.

Elliot S. Berkowitz as Amicus Curiae on behalf of Respondent Adrienne Stuart.

No appearance for Respondent Workers' Compensation Appeals Board.

## OPINION

**WERDEGAR, J.**—Labor Code[1] section 5814 states in pertinent part that "[w]hen payment of compensation has been *unreasonably* delayed or refused, either prior to or subsequent to the issuance of an award, the full amount of the order, decision or award shall be increased by 10 percent." (Italics added.) In this case, a clerical mistake attributing to the employee a change of address for the employer led to a one-week delay in the employee's benefit check for her temporary disability. The workers' compensation judge (WCJ) found this delay to be unreasonable and assessed the statutory penalty of 10 percent of the entire award. The Workers' Compensation Appeals Board (the Board) and the Court of Appeal agreed. Because the

---

[1]All further statutory references are to this code.

WCJ's finding that the delay was unreasonable is not supported by substantial evidence, we reverse.

FACTS

Employee Adrienne Stuart sustained an industrial injury in 1991 while employed as a legal secretary for Attorney Gerald Rosenberg. She thereafter received temporary disability payments of $336 per week, payable every two weeks. On July 1, 1994, the statutory rate for her injury was increased to $406 per week. On December 20, 1994, Stuart received a letter from Rosenberg's workers' compensation insurance carrier, petitioner State Compensation Insurance Fund (SCIF), explaining the increase and giving her a lump sum check (dated December 13, 1994) for the aggregate amount of the increase that had accumulated as of July 1. (Stuart received checks for the correct amount after that date.) Pursuant to section 5814, Stuart sought and obtained a penalty of 10 percent on the entire award for an unreasonably delayed payment, and the Board denied SCIF's petition for reconsideration.

Other than the December 13, 1994, lump sum check representing the statutory increase, SCIF's checks to Stuart for her temporary disability had been timely. Stuart's case had been open since October 17, 1991, and her checks had always been sent to the same address. On March 15, 1995, Jo Jo Arago became the claims adjuster handling Stuart's case for SCIF, but he went on vacation in April of that year. His caseload was covered by another adjuster, Grace Chu. On or about April 28, 1995, Chu received a letter from Rosenberg informing SCIF he was relocating his law office to Beverly Hills. Rosenberg's new business address was erroneously entered into SCIF's computer as a change of address for Stuart. As a result, Stuart's May 15, 1995, benefits check was sent to Rosenberg's Beverly Hills law office by mistake.

When Stuart did not receive her check for temporary disability benefits, she contacted her attorney, Jack Goldfarb. Goldfarb's secretary called Arago on May 18, 1995, and Goldfarb himself called SCIF the next day. Arago told him he would reissue the check, with penalties[2] and interest. The total delay to Stuart in receiving her check was one week.

Stuart then filed a declaration of readiness to proceed (complaint) on May 30, 1995, alleging she was entitled to a 10 percent increase in her overall

---

[2]With exceptions inapplicable to this case, section 4650, subdivision (d) provides in pertinent part: "If any indemnity payment is not made timely as required by this section, the amount of the late payment shall be increased 10 percent and shall be paid, without application, to the employee . . . ." As explained, *post*, this 10 percent penalty on the amount of the late payment is not at issue in this case.

award as a penalty pursuant to section 5814, due to SCIF's unreasonable failure to pay benefits in a timely fashion. At a hearing before the WCJ, Arago testified he had not spoken with Chu but assumed she had made the mistake in entering the address. Arago admitted, however, his assumption was mere speculation. In addition, he testified he would not have made the mistake of entering the employer's change of address for the employee.

The WCJ found SCIF "unreasonably delayed the payment of temporary disability benefits" and Stuart was thus "entitled to a ten percent penalty to be assessed against the entire specie of benefits, past and future." SCIF sought reconsideration, citing *Kampner* v. *Workers' Comp. Appeals Bd.* (1978) 86 Cal.App.3d 376 [150 Cal.Rptr. 222] (*Kampner*), and asked the WCJ to consider SCIF's four-year history of timely semimonthly payments to Stuart. Stuart opposed reconsideration, arguing the WCJ should consider SCIF's earlier section 5814 penalty for failing timely to pay the increased benefits in 1994. In her "Report and Recommendation on Petition for Reconsideration," the WCJ reiterated the facts, distinguished *Kampner* (discussed, *post*), and expressly found SCIF's payment history irrelevant. She recommended the petition for reconsideration be denied. The Board denied reconsideration, relying on its review of the record and the WCJ's report.

The Court of Appeal issued a writ of review, but denied relief. It agreed with the WCJ that *Kampner, supra*, 86 Cal.App.3d 376, was distinguishable and concluded "the misreading of the straightforward, uncomplicated change-of-address letter from Stuart's employer was inexcusable and an unreasonable cause of the week's delay to a recipient dependent upon timely receipt of benefits to which she was entitled." We granted review.

DISCUSSION

A. *Background*

Three types of penalties may apply when payment of compensation is delayed. As noted, *ante*, section 4650, subdivision (d) provides in pertinent part that "[i]f any indemnity payment is not made timely as required by this section, the amount of the late payment shall be increased 10 percent and shall be paid, without application, to the employee . . . ." In other words, if a payment is late, that individual payment is automatically increased by 10 percent, and this penalty applies irrespective of the reason for the delay. (*State of California* v. *Workers' Comp. Appeals Bd.* (1996) 44 Cal.App.4th 128, 139 [51 Cal.Rptr.2d 606] [section 4650 penalty "is a self-executing, strict liability provision not dependent on a finding of unreasonable delay"].)

Section 5814, at issue in this case, provides: "When payment of compensation *has been unreasonably delayed or refused*, either prior to or subsequent to the issuance of an award, the full amount of the order, decision or

award shall be increased by 10 percent. The question of delay and the reasonableness of the cause therefor shall be determined by the appeals board in accordance with the facts. Such delay or refusal shall constitute good cause under Section 5803 to rescind, alter or amend the order, decision or award for the purpose of making the increase provided for herein." (Italics added.)

Section 5814 thus sets forth a much harsher penalty than section 4650, for its imposition requires a 10 percent increase of "the full amount of the order, decision or award" as opposed to 10 percent of the single delayed payment. Thus, a section 5814 penalty "is to be computed by assessing 10 percent of the entire amount ultimately awarded for the particular class of benefit which has been unreasonably delayed or withheld." (*Gallamore* v. *Workers' Comp. Appeals Bd.* (1979) 23 Cal.3d 815, 827 [153 Cal.Rptr. 590, 591 P.2d 1242] (*Gallamore*); see also *Rhiner* v. *Workers' Comp. Appeals Bd.* (1993) 4 Cal.4th 1213, 1218 [18 Cal.Rptr.2d 129, 848 P.2d 244] ["the plain wording of [section 5814 indicates] that the Legislature intended the penalty to be applied against the total amount of the award, without a deduction or credit for the employer's timely preaward payments"].) The justification for the harsher penalty is the Board's finding the delay in paying (or refusal to pay) benefits was "unreasonable."[3]

■ The purpose of the section 5814 penalty is twofold. First, the statute provides an incentive to employers and insurance carriers to pay benefits promptly by making delays costly. (*DuBois* v. *Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 395-396 [20 Cal.Rptr.2d 523, 853 P.2d 978]; *Adams* v. *Workers' Comp. Appeals Bd.* (1976) 18 Cal.3d 226, 229 [133 Cal.Rptr. 517, 555 P.2d 303].) A second and " 'equally important purpose' " is " 'to encourage timely payments of compensation to injured working people to promptly ameliorate economic hardship [resulting from] the interruption of their employment and concomitant loss of income.' " (*DuBois, supra,* at p. 396, quoting *Consani* v. *Workers' Comp. Appeals Bd.* (1991) 227 Cal.App.3d 12, 23 [277 Cal.Rptr. 619].) The touchstone of a section 5814 penalty is a delay or refusal to pay benefits that is *unreasonable.*

By adopting the WCJ's report, the Board found SCIF's one-week delay in paying Stuart her temporary disability was unreasonable. The scope of our review of this decision is set forth in section 5952, which provides: "The

---

[3]Section 5813 completes this triad of penalties. That section authorizes a financial sanction of up to $2,500 for "bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay." (*Id.*, subd. (a).) Under section 5813, subdivision (a), the workers' compensation referee or the Board is also authorized to order the offending party "to pay any reasonable expenses, including attorney's fees and costs," incurred by the other party.

review by the court shall not be extended further than to determine, based upon the entire record which shall be certified by the appeals board, whether: [¶] . . . [¶] (c) The order, decision, or award was unreasonable. [¶] (d) The order, decision, or award was not supported by substantial evidence. [¶] (e) If findings of fact are made, such findings of fact support the order, decision, or award under review. [¶] Nothing in this section shall permit the court to . . . exercise its independent judgment on the evidence."

As a general matter, division 4 of the Labor Code, concerning workers' compensation, "shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment." (§ 3202.) ■ Accordingly, we generally will uphold decisions of the Board if they are supported by substantial evidence. (*LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 635 [83 Cal.Rptr. 208, 463 P.2d 432].) When penalties are assessed in the workers' compensation setting, we have cautioned that "the board should proceed with a view toward achieving a fair balance between the right of the employee to prompt payment of compensation benefits, and the avoidance of imposition upon the employer or [insurance] carrier of harsh and unreasonable penalties." (*Gallamore*, *supra*, 23 Cal.3d at p. 828.) We have since reiterated this position. (*Christian* v. *Workers' Comp. Appeals Bd.* (1997) 15 Cal.4th 505, 517 [63 Cal.Rptr.2d 336, 936 P.2d 115]; *Rhiner* v. *Workers' Comp. Appeals Bd.*, *supra*, 4 Cal.4th at p. 1230.)

■ Reading together sections 5814 ("The question of delay and the reasonableness of the cause therefor shall be determined by the appeals board in accordance with the facts.") and 5952 (review by an appellate court is limited to whether the Board's decision "was unreasonable" and is supported by "substantial evidence"), we thus turn to an examination of the factual basis of the Board's decision that SCIF's delay was unreasonable, keeping an eye on whether the Board's decision represents a fair balance between the interests of the employee and employer.[4]

B.   *The WCJ's Opinion*

· The WCJ found Mr. Arago was "a hardworking and conscient[i]ous claims adjuster" and found his assertion that he would not have made the same data entry mistake was "credibl[e]." In addition, "Undoubtedly, Ms. Chu did not intend to delay applicant's temporary disability check. However,

---

[4]In denying reconsideration in this matter, the Board explained in its brief order that it had reviewed the record and "for the reasons stated in [the WCJ's] report which we adopt and incorporate, we will deny reconsideration." The Board's decision thus refers back to the WCJ's report, and the correctness of the Board's decision will depend on whether the WCJ's report is supportable.

the error probably did result from a lack of care. Mr. [Arago] would not have made that error and neither would anyone else who took the time to read the document in question before acting on it. [¶] It may well be that Ms. Chu was so overwhelmed from having to do both her and Mr. [Arago's] work that she didn't have enough time to exercise the proper care. This would excuse Ms. Chu, but not her employer whose responsibility it is to make sure that claims adjusters have manageable workloads such that benefits will be paid properly. [¶] Under the circumstances, the delay was unreasonable and applicant is entitled to a ten percent penalty to be assessed against all temporary disability benefits, past and future."

At the threshold, we observe that Ms. Chu did not testify, so there was no evidence on which the WCJ could rely to ascertain whether or not Chu was "overwhelmed" filling in for Mr. Arago. There was also no evidence presented concerning whether SCIF ensured its adjusters enjoyed manageable caseloads. Indeed, Arago testified he had not spoken to Chu and that he was "speculating" about the cause of the error. The WCJ's conclusions regarding Chu's being overworked or SCIF's failing to ensure sufficient adjusters to process benefits are thus revealed as pure speculation. Such speculation does not comprise substantial evidence supporting the WCJ's finding that the delay in paying benefits was unreasonable. (See *Hegglin* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 162, 169 [93 Cal.Rptr. 15, 480 P.2d 967] [medical opinion based on "surmise, speculation, conjecture, or guess" does not comprise substantial evidence].)

There being no evidentiary support for the WCJ's findings that Chu was overwhelmed by her caseload or that SCIF failed to ensure its adjusters had sufficient time to process the necessary paperwork, we are left with a single factual finding in support of the WCJ's initial decision that the delay was unreasonable: Mr. Arago would not have made the same mistake. Mr. Arago testified to that effect, and the WCJ expressly found him credible on this point, so there is substantial evidence to support this factual finding. Nevertheless, that Arago would not have made the same mistake does not comprise substantial evidence supporting a section 5814 penalty.

The mistake in entering the change of address admittedly was careless. Nevertheless, in any endeavor in which humans are involved, mistakes are made. A reasonably short delay attributable to human error cannot, standing alone, be considered unreasonable. In requiring a finding of unreasonableness as the trigger for a section 5814 penalty, our Legislature intended something beyond the mere existence of any delay in the payment of benefits. A contrary interpretation of the statutory scheme would improperly conflate the penalty in section 4650, subdivision (d), which is an automatic,

strict liability penalty, with the penalty in section 5814, defeating the Legislature's expressed intent to require a heightened showing of culpability to justify the greater penalty.

Were there substantial evidence in the record showing that SCIF had a history of improperly processing benefits payments, or that SCIF failed to provide a sufficient number of adjusters to handle the caseload or otherwise configured its office or business practices in such a way that errors were likely or probable, we would have a different case. Here, however, all the record demonstrates is a solitary instance of human error, which was quickly corrected upon discovery.

We conclude the WCJ's initial decision concluding SCIF unreasonably delayed payment of Stuart's benefits is not supported by substantial evidence.

### C. The WCJ's Report and Recommendation on Petition for Reconsideration

Consideration of the WCJ's report on SCIF's petition for reconsideration is a more complex undertaking, but leads to the same result. Following the WCJ's decision in this matter, SCIF sought reconsideration, citing *Kampner*, *supra*, 86 Cal.App.3d 376, apparently for the first time. In *Kampner*, the widow and son of the decedent employee (the Kampners) entered into a compromise and release for death benefits, and the Board approved the settlement on November 18, 1976. Attorneys for the employer's workers' compensation adjusting agency, R. L. Kautz & Company (Kautz), did not forward the Board's order to Kautz until November 30, 1976. This delay was attributable to the attorneys' office being closed for the long Thanksgiving weekend. Kautz received the order on December 2, 1976, and was required to prepare eight separate checks for the Kampners, their attorneys, and various lien claimants. The checks issued on December 15, 1976, but the Kampners did not immediately receive their check because it was sent to the wrong address. The record did not show when the Kampners received payment, although apparently they eventually received their check. (*Kampner*, *supra*, at p. 378.)

The Kampners then requested a 10 percent penalty for an unreasonable delay in payment, citing section 5814. The workers' compensation judge granted the request, but a divided panel of the Board annulled the penalty, explaining that " '[i]t is inevitable that delays of a few days will occur at the points at which responsibility for different functions must be passed along. This becomes unreasonable only when the delays are excessive.' " (*Kampner*, *supra*, 86 Cal.App.3d at p. 380, quoting decision of the Board.) " 'In this

case . . . the Board is required to determine whether the delay here was egregious in the light of the legitimate needs of administering workers' compensation insurance. Measured by this criterion, the evidence as described above, fails to establish a delay of sufficient duration to be described as unreasonable.' " (*Ibid.*)

The Court of Appeal in *Kampner, supra,* 86 Cal.App.3d 376, cited several reasons why it agreed with the Board. First, there was no statutory requirement directing payment be made within a specified number of days following approval of a compromise and release. (*Id.* at p. 383.) Second, nothing in the terms of the settlement reflected a schedule of payment. (*Ibid.*) Third, the Board did not evaluate the delay in payment according to asserted prevailing industry practice, but according to "its understanding of how long the procedure should have taken." (*Ibid.*) Fourth, the appellate court noted that, although the Kampners' check was sent to the wrong address, they did not introduce any evidence "to demonstrate the length of the delay resulting. Accordingly, lacking this vital information from petitioners the board could not judge if this particular error resulted in an unreasonable delay." (*Id.* at p. 384.)

In the present case, SCIF contends *Kampner, supra,* 86 Cal.App.3d 376, "teaches us that business realities must be factored into the equation of whether or not conduct was unreasonable" within the meaning of section 5814. While *Kampner* is conducive to SCIF's position, SCIF fails to address the WCJ's discussion distinguishing *Kampner* on a variety of grounds. Thus, the WCJ found *Kampner* was distinguishable because here, unlike in *Kampner*, there was a statutory deadline for payment.[5] In addition, although the *Kampner* court spoke in terms of an aggregate 26-day delay (as opposed to the 7-day delay here), no evidence indicated what portion of the delay was attributable to the mistake of sending the check to the wrong address. Finally, unlike in *Kampner*, here there was no evidence of an intervening holiday period or other disruption causing delay. The Court of Appeal in the present case agreed with the WCJ in finding *Kampner* distinguishable.

Although the facts of *Kampner* are not identical to the instant case, we disagree with the Court of Appeal, the Board and the WCJ that *Kampner* is so different that it fails to provide guidance here. While it is true the delay in this case was seven days past the statutory deadline for payment, whereas in *Kampner* there was no statutory deadline, the touchstone in both cases for section 5814 purposes is *the reasonableness* of the delay. On this point,

---

[5]Section 4650, subdivision (c) provides "[p]ayment of temporary or permanent disability indemnity subsequent to the first payment shall be made as due every two weeks on the day designated with the first payment." As noted, *ante*, SCIF understood this deadline and had made timely semimonthly payments for over three years.

*Kampner*'s discussion, essentially adopting the workers' compensation judge's report in that case, is pertinent: " 'the Board is required to determine whether the delay here was egregious in the light of the legitimate needs of administering workers' compensation insurance.' " (*Kampner, supra,* 86 Cal.App.3d at p. 380; see also *Smith v. Workers' Comp. Appeals Bd.* (1986) 186 Cal.App.3d 1451, 1454 [231 Cal.Rptr. 364] [genuine misunderstanding whether applicant entitled to additional $1,000 after employer had already paid $23,750 comprised reasonable grounds justifying 22-day delay].) Thus, irrespective of whether the delay in *Kampner* was 26 days (as SCIF argues) or only as little as 1 day (as the WCJ opined), *Kampner* held a short delay in payment, occasioned by the realities of the business of processing claims for benefits, is not unreasonable.

In addition, although no evidence in *Kampner* established what portion of the delay was caused by sending the check to the wrong address, we may surmise that error engendered at least a few days' delay. *Kampner* is thus more similar to this case than it is different. Moreover, the absence in the instant case of an intervening holiday weekend is of no moment, for in *Kampner* that fact contributed to a 26-day delay in payment, far in excess of the 7-day delay in this case. In short, we disagree with the attempt to cabin the reasoning, and thus the application, of *Kampner*.

In addition to finding *Kampner, supra,* 86 Cal.App.3d 376, is not distinguishable on the grounds proffered, we also agree with SCIF that *Kampner* is persuasive here. In *Kampner*, as here, a check for payment of benefits was misaddressed as a result of a clerical error, leading to a few days' delay. The *Kampner* court recognized that a short delay caused by the realities of business cannot, standing alone, be considered unreasonable. Any other conclusion would convert the section 5814 penalty into a strict liability penalty and subvert the Legislature's intent that the penalty be triggered only by unreasonable conduct. (See *Christian v. Workers' Comp. Appeals Bd., supra,* 15 Cal.4th at p. 517 [" 'strict liability' " penalty of section 4650 "normally is a sufficient deterrent to late payment"].) To the extent the Board authorized a section 5814 penalty based on such a short delay in payment and on an insubstantial factual basis, it runs afoul of our directive that "[i]n penalty cases the board should proceed with a view toward achieving a fair balance between the right of the employee to prompt payment of compensation benefits, and the avoidance of imposition upon the employer or [insurance] carrier of harsh and unreasonable penalties." (*Gallamore, supra,* 23 Cal.3d at p. 828.)

Of course, the length of the delay, as well as the size of the late payment, should be considered by the Board when assessing the reasonableness of the delay. (*Gallamore, supra,* 23 Cal.3d at pp. 822-823.) In addition, although a

short delay caused by business realities may be reasonable, the Board may consider other factors, such as whether the employer or workers' compensation insurance carrier is adequately staffed for the anticipated workload. Should a delay, even a short delay, be traced to inadequate staffing, the Board may act within its discretion and find the delay unreasonable. As the court in *Kampner* explained: "While such conditions explain a delay, they do not make the delay reasonable." (*Kampner, supra,* 86 Cal.App.3d at p. 384.)

We conclude the WCJ's report on reconsideration that SCIF unreasonably delayed payment of Stuart's benefits is not supported by substantial evidence. Accordingly, the Board's reliance on the report to deny reconsideration is unsupportable.

D. *Kerley v. Workmen's Comp. App. Bd. (1971) 4 Cal.3d 223*

*Kerley* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 223 [93 Cal.Rptr. 192, 481 P.2d 200] (*Kerley*) does not control this case. *Kerley* concerned an employer who unilaterally stopped making disability payments, alleging that the employee's temporary disability had ceased. (*Id.* at p. 226.) This court held employers have no absolute right to discontinue payments (*id.* at p. 227), that "the only satisfactory excuse for delay in payment of disability benefits . . . is genuine doubt from a medical or legal standpoint as to liability for benefits" (*id.* at p. 230), and that the employer has the burden of demonstrating such doubt (*ibid.*).

Although *Kerley* stated that "the *only* satisfactory excuse for delay in payment of disability benefits . . . is genuine doubt from a medical or legal standpoint as to liability for benefits" (*Kerley, supra,* 4 Cal.3d at p. 230, italics added), our opinion in *Kerley* was not intended to address the universe of potential factual circumstances that could give rise to delay in payment. Instead, we addressed in that case the discrete situation of an employer *intentionally* refusing to pay, not as here, a situation where the delay was *inadvertent. Kerley* is thus distinguishable on this ground, for there is no factual finding in this case that the delay in payment was intentional. *Jensen* v. *Workers' Comp. Appeals Bd.* (1985) 170 Cal.App.3d 244, 247 [216 Cal.Rptr. 33] suffers from the same flaw. (See also *Smith* v. *Workers' Comp. Appeals Bd., supra,* 186 Cal.App.3d at p. 1455 [criticizing *Jensen* and eschewing strict interpretation of *Kerley*].) To the extent *Jensen* suggests an inadvertent delay is per se unreasonable, it is disapproved.

CONCLUSION

The judgment of the Court of Appeal is reversed and the penalty imposed on SCIF pursuant to section 5814 is annulled.

George, C. J., Baxter, J., Chin, J., and Brown, J., concurred.

**MOSK, J.**—I dissent.

The workers' compensation judge (WCJ) found, as a fact, that the delay in payment of workers' compensation benefits in this matter was unreasonable.

The Workers' Compensation Appeals Board found, as a fact, that the delay was unreasonable.

The Court of Appeal found, as a fact, that the delay was unreasonable.

I would affirm.

Although I agree, in principle, that inadvertent error in processing workers' compensation payments is not per se "unreasonable" under Labor Code section 5814, I disagree that we should second-guess the determination that the delay at issue here was unreasonable. In my view, it is supported by substantial evidence.

The facts herein are simple and clear. Jo Jo Arago, the claims examiner for the State Compensation Insurance Fund (SCIF), who was assigned to injured employee Adrienne Stuart's case, went on vacation during the last week of April 1995. During that period, another SCIF employee, Grace Chu, covered his desk. Chu reviewed a two-sentence letter, dated April 15, from Stuart's employer notifying SCIF of *his* change of address. The letter, headed with the *employer's* name, said: "Kindly change your records to reflect a change of my mailing address from 15300 Ventura Boulevard, Suite 415, Sherman Oaks, CA to: [¶] Post Office Box 2608 [¶] Beverly Hills, CA 90213-2608. [¶] Thank you." Chu incorrectly entered the change of address into the computer as a change of Stuart's address, with the result that Stuart's May 15 benefits were sent to the wrong address.

At the hearing before the WCJ, Arago testified that he would not have made the mistake Chu made. The WCJ found Arago credible, observing that he "gave the impression of being a hardworking and conscientious claims adjuster." Taking into consideration Arago's testimony and the fact that the text of the letter from Stuart's employer was straightforward and unambiguous, the WCJ concluded that Chu's error resulted from a lack of ordinary diligence: "Mr. [Arago] would not have made that error and neither would anyone else who took the time to read the document in question before acting on it." Arago, in effect, testified concerning the applicable standard of

professional care at SCIF; his testimony supports a conclusion that Chu's handling of this matter did not meet that standard.[1]

I also agree with the Court of Appeal that *Kampner* v. *Workers' Comp. Appeals Bd.* (1978) 86 Cal.App.3d 376 [150 Cal.Rptr. 222] offers little guidance on the factual issue before us. It involved a different question: i.e., " 'the legitimate needs of administering workers' compensation insurance' " (*id.* at p. 380), and turned on the appropriate standard of conduct for the *diligent* processing of a settlement. Although the holiday closures and work disruptions in *Kampner* may have been examples of such "legitimate needs," *lack of ordinary diligence* in handling a simple request for a change of address emphatically does not qualify. Thus, unlike the majority, I do not believe that the "realities of the business of processing claims for benefits" (maj. opn., *ante*, at p. 1219) require us to condone the type of carelessness the WCJ found here. That the mistake at issue involved "clerical error" does not excuse it or negate its real-life impact on the employee who failed to receive her disability benefits in a timely manner. Nor is the relative shortness of the delay a reason to excuse or overlook SCIF's error. True, a one-week delay may seem to be of little consequence. It can be of significance, however, if the employee has rent to pay on time or if she has medical or food bills to pay in order to properly survive. She should not have to bear the burden of SCIF's lack of ordinary diligence.

Because, after reviewing the record, I see no grounds for reversal, I would affirm the finding that the delay was unreasonable, and, accordingly, the imposition of a mandatory penalty under Labor Code section 5814.

Kennard, J., concurred.

---

[1] The majority point to a comment by the WCJ to the effect that "[i]t may well be that Ms. Chu was so overwhelmed from having to do both her and Mr. [Arago's] work that she didn't have enough time to exercise proper care," and observe that there was no evidence to support the suggestion that Chu was "overwhelmed" or about whether SCIF ensured its adjusters manageable loads. I agree that the comment did not amount to substantial evidence. Nor did the WCJ purport to rely on it for that purpose. Rather, it found that the error itself was inexcusable: No one who actually read the document would have made it. No history of improperly processing benefits payments was required in order to account the "solitary" error here unreasonable. (See maj. opn., *ante*, at pp. 1216-1217.)