[No. B133972. Second Dist., Div. Two. May 3, 2000.]

T. J. WATERS, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, WARNER
CONSTRUCTORS, INC., et al., Respondents.

**COUNSEL**

Rose, Klein & Marias and Herbert I. Galperson for Petitioner.

Gray and Prouty and John P. Welch for Respondents California Compensation Insurance Company and Warner Constructors, Inc.

No appearance for Respondent Workers' Compensation Appeals Board.

## OPINION

**COOPER, J.**—A workers' compensation judge (WCJ) imposed a 10 percent increase or penalty on T. J. Waters's temporary and permanent disability benefits pursuant to Labor Code[1] section 5814 because he found that each species of benefit was unreasonably delayed by defendants, Warner Constructors, Inc., and its insurance carrier, California Compensation Insurance Company. Defendants filed a petition for reconsideration with the Workers' Compensation Appeals Board (WCAB) appealing the 10 percent penalty imposed on the permanent disability benefits.[2] The WCAB granted reconsideration, rescinded the findings and award, and remanded the matter finding that the WCJ failed to specify the basis for imposing the penalty and confused the facts of the case.

After the second trial, the WCJ again found that the temporary and permanent disability payments were unreasonably delayed and imposed a 10 percent penalty on each specie of benefit. Defendants again filed a petition for reconsideration appealing the 10 percent penalty imposed on permanent disability benefits. The WCAB granted the petition and issued a decision rescinding the 10 percent penalty on permanent disability benefits stating that the delay was inadvertent and due to human error.

Waters filed a petition for reconsideration with the WCAB appealing the decision. The WCAB reaffirmed the decision and denied the petition. Waters appeals to this court by writ of review for the WCAB's decision to be vacated and to reinstate the decision of the WCJ, and for any further relief the court finds appropriate.

We find that the repeated and continuous late payment of permanent disability was unreasonable and not inadvertent due to human error. We annul the decision of the WCAB, and the WCJ's decision in imposing the 10 percent penalty on permanent disability is reinstated.

### FACTUAL BACKGROUND

T. J. Waters (Waters), a carpenter construction supervisor employed by Warner Constructors, Inc. (Warner), sustained permanent total disability

---

[1]All further statutory references are to the Labor Code unless otherwise indicated.

[2]A second issue raised at the hearing, but not expressly decided by the WCJ, was a $200 credit for overpayment during the disputed period. When the WCAB granted defendants' petition for reconsideration, it ordered the WCJ to make a determination on this issue. The WCJ found after the second hearing that the defendants could not establish a right to overpayment while still owing money. The WCAB agreed with the WCJ because the defendants "cannot [establish] an overpayment when it admits to being behind in its payments to applicant."

from an industrial back injury on October 14, 1992, and during the period of September 15, 1985, through October 14, 1992. California Compensation Insurance Company (Cal Comp) was Warner's insurance carrier. In February of 1997, Cal Comp received the report of the treating doctor indicating Waters was permanently totally disabled. Based on the report the parties agreed, in a stipulation with request for award approved on May 28, 1997, that Waters's temporary disability (TD) rate was $336 per week, except for July 1, 1996, to March 12, 1987, when the rate became $490 per week. In addition, the parties stipulated that he was paid TD intermittently from October 14, 1992, and beginning March 16, 1997, was to be paid $336 per week permanent disability (PD) for life. Furthermore, the weekly PD payment was to be reduced to $311 per week until attorneys fees were paid and by an additional $11 per week until a PD advance was satisfied.

However, on March 26, 1997, defendants issued a check for PD for the period of March 13 through March 26, 1997, for only $280 or $140 per week. On March 31, 1997, Waters's counsel wrote a letter to Fabin West (West), Cal Comp's claims adjuster, informing him that payment should be $336 per week pursuant to the treating doctor's report.

On April 8, 1997, Cal Comp issued a check for the period of March 13 through March 26, 1997, in the amount of $56. Waters's counsel again wrote a letter to West on April 8, 1997, stating the amount should be $336 per week.

Cal Comp issued a check on April 9, 1997, for the period of March 27 through April 9, 1997, in the amount of $336. Waters's counsel wrote West another letter on April 14, 1997, confirming their phone conversation that the PD amount should be $336 per week and not every two weeks.

On April 23, 1997, Cal Comp again issued a check in the amount of $336 for the two-week period of April 10, 1997, to April 23, 1997. Waters's counsel wrote West once more informing him that the amount should be $336 per week and penalties would be pursued. Finally, Cal Comp issued a check on May 2, 1997, in the amount of $1,064 for the period of March 13, 1997, to April 23, 1997, to cover the errors that occurred.

Waters filed a trial memorandum with the WCJ, seeking 10 percent penalties on TD and PD benefits pursuant to section 5814 for unreasonable delay, alleging that payments were issued at the wrong rate. A hearing was scheduled to resolve the proper TD and PD payments and the 10 percent penalties.

## PROCEDURAL BACKGROUND

*The First Trial*

Trial commenced on August 8, 1997. Exhibits included Cal Comp's computer printout of benefit payments. Waters testified that he had been continuously paid benefits, however often at the wrong rate.

West testified that he had been a claims adjuster for Cal Comp since July 15, 1996, and had nine years, experience. He also testified he handled Waters's claim since August of 1996 and that there is a computer system at Cal Comp that automatically calculates and adjusts the rate.

West admitted that there were mistakes in the payment rates but stated these were due to clerical or computer error. Waters should have been paid $672 every two weeks and not $336 every two weeks.

With regards to TD payments, from July 1st, 1996, to January 27th, 1997, the applicant was not being paid at a proper rate and was underpaid $960. Cal Comp then issued a check in the amount of $960 and an additional $96 was added for penalty. West stated this was a clerical mistake. West further testified that from July 1, 1996, to March 12, 1997, Waters received $406 per week, but the proper rate was $490 per week. West added that although Waters was being paid at the wrong rate he did not check the records to see if money was owed.

West also testified that he received the stipulated award but reviewed it 60 days after it was approved by the WCAB, and then sent a check dated August 7, 1997, to cover the arrearages. The WCJ quoted West as saying that "he [felt] overworked and inundated and frustrated with the amount of files that he [had] to adjust." West also admitted that he received letters from Waters's counsel, but he did not remember when he saw them. He further admitted receiving phone calls from Waters's counsel informing him that Waters was being paid at the wrong rate. Corrections were then made as indicated by the payment records.

The WCJ determined that the defendants unreasonably delayed payment of both TD and PD and imposed a 10 percent increase or penalty on each specie of benefit. The WCJ, in his opinion on decision, stated that the decision was based on "the testimony of witnesses and the documents presented."

The defendants filed a petition for reconsideration with the WCAB, acknowledging incorrect payments were made according to the treating

doctor's report and the stipulated award. However, the mistakes were computer errors, and corrections were made as quickly as possible.

Defendants further contended that the WCJ's summary of evidence overstated West's testimony. Defendants alleged that West actually testified "he felt inundated at times." Defendants further argued that: "The fact that he (West) honestly indicated that at times he felt inundated is nothing more than an honest assessment that any worker might give in regard to the work they have to perform. There was no indication within the testimony that [West] was unable to handle the files that he was assigned, due to his inability to timely review the files and pay proper benefits."

In the report on reconsideration, the WCJ responded there was unreasonable delay because West did not discover benefits were being paid at half the proper rate until reviewing the stipulated award 60 days after approval, and there was also a history of delay and underpayments.

The WCAB granted defendants' petition for reconsideration stating that the WCJ failed to specify in his opinion on decision the basis for the determination. The WCAB noted that the WCJ only stated that he " 'relied on the testimony of the witnesses and the documents presented.' " Moreover, the WCAB found that the WCJ confused the facts of the case in his report on reconsideration. Because of the WCJ's failure to specify his reasons for his decision and for the confusion on the facts of the case, the WCAB rescinded the 10 percent penalties imposed and remanded the case to redetermine all issues raised by the parties.[3]

*The Second Trial*

For the second trial, the parties submitted on the record. The defendants also offered as authority *State Comp. Ins. Fund v. Stuart* (1998) 18 Cal.4th 1209 [77 Cal.Rptr.2d 528, 959 P.2d 1204] (*Stuart*). In *Stuart*, the Supreme Court determined a single instance of a one-week delay in payments due to mere inadvertence was not unreasonable under section 5814. Waters responded that the facts in Stuart were completely distinguishable.

The WCJ again imposed a 10 percent penalty on both TD and PD. This time the WCJ stated in his opinion on decision that: "In reaching this conclusion, the judge relied on the testimony of the witnesses and the documents presented. Of note was the testimony of Fabin West which was considered dispositive of the issue. There was a history of late and/or

---

[3]Although the defendants only appealed the imposition of the 10 percent penalty on PD, the WCAB's order rescinded the 10 percent penalty on both TD and PD.

underpayments to the worker. Further, the payment of the award was delayed for more than sixty (60) days without an adequate explanation."

The defendants once more filed for reconsideration with the WCAB contesting the 10 percent penalty imposed only on PD benefits. In addition to the arguments presented in the first petition, the defendants alleged in more detail that the incorrect payment rates were not a consequence of the stipulated award, but were due to errors in entering changes of benefits in the computer following the treating doctor's report that Waters was 100 percent disabled.[4] The defendants further argued the situation was comparable to *Stuart*.

The WCJ issued a report on reconsideration, repeating his prior findings that the conduct of the adjuster was unreasonable. The WCJ explained the adjuster's conduct was unreasonable because he did not review the stipulated award until 60 days after it was signed and Waters was being paid one-half of the amount stipulated to during those 60 days. The WCJ again noted that there had been a history of underpayments in handling Waters's disability benefits. Moreover, the WCJ stated: "He (West) testified that in early 1997, the worker had been paid indemnity at the wrong rate. No explanation was given for this error except to note that the error was corrected at a later date. Several weeks later, another error was made; and again, no explanation was given as to why this occurred except to note that the error was later corrected."

The WCAB granted reconsideration and rescinded the 10 percent penalty imposed on PD benefits. In its decision, the WCAB summarized the payment corrections, which included the August 7, 1997 check. The WCAB concluded: "Here, the evidence supports defendant's contention that the delays in paying permanent disability at the correct rate [were] . . . inadvertent human error, which were quickly corrected. Applicant was provided a lump sum payment of $1,064 on May 2, 1997 to cover the underpayment. This type of error clearly falls within the scope of the short delays found not to trigger a penalty in *Stuart*."

Waters filed a petition for reconsideration following the WCAB's decision, arguing that his case substantially differed from *Stuart*. Waters pointed out West admitted he was overworked and inundated and frustrated with the amount of files that he had to adjust. Waters further argued that West knew he was paying the wrong rate for seven weeks, as confirmed by the letters

---

[4]Defendants stated in the petition that "after receiving Dr. Gray's report, however, when entered into the computer, the request for payment was apparently entered incorrectly, and payments were paid inappropriately."

and phone calls, which was not an inadvertent careless mistake lasting one week.

The WCAB denied Waters's petition for the reasons given in its previous decision. The WCAB declined to further address Waters's argument that the delay in this case was not similar to the inadvertent human error found in *Stuart.*

Waters filed a petition for writ of review requesting the WCAB's opinion and denial of reconsideration be vacated and the decision of the WCJ be reinstated, and for any further relief that this court finds appropriate. Waters distinguished *Stuart* from his case, which he argued involved overworked and understaffed claims handling and a 52-day delay despite numerous letters and phone calls.

The defendants maintained in their untimely answer that inadvertent human error resulted in a 38-day delay, which fits perfectly within *Stuart.*

## DISCUSSION

### Rules re Review

The appellate courts are authorized to review WCAB decisions and issue a writ of review pursuant to section 5950, which provides: "Any person affected by an order, decision, or award of the appeals board may, within the time limit specified in this section, apply to the Supreme Court or to the court of appeal for the appellate district in which he resides, for a writ of review, for the purpose of inquiring into and determining the lawfulness of the original order, decision, or award or of the order, decision, or award following reconsideration."

The scope of review is set forth in section 5952, which provides: "The review by the court shall not be extended further than to determine, based upon the entire record which shall be certified by the appeals board, whether: [¶] (a) The appeals board acted without or in excess of its powers. [¶] (b) The order, decision, or award was procured by fraud. [¶] (c) The order, decision, or award was unreasonable. [¶] (d) the order, decision, or award was not supported by substantial evidence [¶] (e) If findings of fact are made, such findings of fact support the order, decision, or award under review. [¶] Nothing in this section shall permit the court to hold a trial de novo, to take evidence, or to exercise its independent judgment on the evidence."

"However, [we are] not bound to accept the [Board]'s factual findings if determined to be unreasonable, illogical, improbable or inequitable

when viewed in light of the overall statutory scheme." (*Western Growers Ins. Co. v. Workers' Comp. Appeals Bd.* (1993) 16 Cal.App.4th 227, 233-234 [20 Cal.Rptr.2d 26].)

█ "As a general matter, division 4 of the Labor Code, concerning workers' compensation, 'shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment.' (§ 3202.)" (*Stuart, supra,* 18 Cal.4th at p. 1215.) Decisions of the [WCAB] are generally upheld if they are supported by substantial evidence. (*LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 635 [83 Cal.Rptr. 208, 463 P.2d 432].) However, when penalties are assessed in the workers' compensation setting, "the board should proceed with a view towards achieving a fair balance between the right of the employee to prompt payment of compensation benefits, and the avoidance of imposition upon the employer or [insurance] carrier of harsh and unreasonable penalties." (*Gallamore v. Workers' Comp. Appeals Bd.* (1979) 23 Cal.3d 815, 828 [153 Cal.Rptr. 590, 591 P.2d 1242] (*Gallamore*).)

We must therefore examine the factual basis of the WCAB's decision that the delay in payment of Waters's benefits was reasonable, keeping in mind the goal of a fair balance between the rights of the employee versus those of the employer.

*The Sole Issue Is Whether the Delay Was Unreasonable*

█ The issue in this case is whether the delay caused by paying Waters's PD benefits at the wrong rate is an unreasonable delay pursuant to section 5814. Section 5814 states: "When payment of compensation has been *unreasonably delayed or refused*, either prior to or subsequent to the issuance of an award, *the full amount of the order, decision or award shall be increased by 10 percent*. The question of delay and reasonableness of the cause therefor shall be determined by the appeals board in accordance with the facts. Such delay or refusal shall constitute good cause under Section 5803 to rescind, alter or amend the order, decision or award for the purpose of making the increase provided for herein." (Italics added.)

█ "The touchstone of a section 5814 penalty is a delay or refusal to pay benefits that is *unreasonable*." (*Stuart, supra,* 18 Cal.4th at p. 1214.) An unreasonable delay or refusal occurs when there is no genuine doubt benefits are owed from a medical or legal standpoint. (*Kerley v. Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 223 [93 Cal.Rptr. 192, 481 P.2d 200] (*Kerley*); *Gallamore, supra,* 23 Cal.3d 815.)

Standards for evaluating the reasonableness of a delay in the payment of benefits can be gleaned from the leading cases. A synopsis of those standards would support the following general principles. First, the burden is on

the employer to establish that a delay was reasonable. (*Kerley, supra,* 4 Cal.3d at p. 227.) Next, the determination of whether a given delay is unreasonable depends upon the totality of the circumstances presented, not solely on the number of days payment was delayed. (*Kampner v. Workers' Comp. Appeals Bd.* (1978) 86 Cal.App.3d 376, 382-383 [150 Cal.Rptr. 222] (*Kampner*).) The reason for the employer's action or inaction plays an important role, and mere inadvertence coupled with a brief delay may not support the imposition of the penalty. (*Stuart, supra,* 18 Cal.4th 1209; *County of Sacramento v. Workers' Comp. Appeals Bd.* (1999) 69 Cal.App.4th 726 [81 Cal.Rptr.2d 780] (*Souza*).) On the other hand, even an inadvertent delay for an unreasonable period of time may be sufficient. (*Kampner, supra,* 86 Cal.App.3d at pp. 382-383.)

Certain other conditions may explain a delay but do not make the delay reasonable. These factors would include items such as: a shortage of personnel; a heavy workload at the employer or carrier with regard to the adjusting of workers' compensation claims; evidence of institutional neglect, such as repeated similar mistakes; inadequate personnel training; and an office configuration or business practices which make errors likely or probable. (*Stuart, supra,* 18 Cal.4th at pp. 1219-1220; *Souza, supra,* 69 Cal.App.4th at pp. 732-733; *Kampner, supra,* 86 Cal.App.3d at p. 384.)

██ The WCAB cited the leading case of *Stuart* in support of its conclusion regarding the reasonableness of the delay. *Stuart* held that "[a] reasonably short delay attributable to human error cannot, standing alone, be considered unreasonable." (*Stuart, supra,* 18 Cal.4th at p. 1216.) The facts of *Stuart*, however, are not comparable to this case. In *Stuart*, the employee, Adrienne Stuart, always had her TD checks mailed to the same address. The claims adjuster handling her case went on vacation and the replacement received a letter from Stuart's former employer informing the carrier of a change of address. The replacement erroneously entered the employer's new address as Stuart's mailing address. As a result, the check was delayed for a total of one week.

The Court of Appeal found this delay unreasonable. The Supreme Court reversed finding the one-week inadvertent delay not to be unreasonable under the circumstances of that case. The Supreme Court noted it would be a different case "[w]ere there substantial evidence in the record showing that [State Compensation Insurance Fund] had a history of improperly processing benefit payments, or that [State Compensation Insurance Fund] failed to provide a sufficient number of adjusters to handle the caseload or otherwise configured office or business practices in such a way that errors were likely or probable." (*Stuart, supra,* 18 Cal.4th at p. 1217.)

In the recent case of *Souza* the court held that a short delay in the payment of death benefits to the widow of a former county employee as a result of

clerical error in issuing the check in the name of the deceased employee, rather than the widow, was not unreasonable. The court noted that the delay was only eight days, was due to inadvertence and was promptly corrected the same day the mistake was discovered. Furthermore, there was no evidence of institutional neglect on the part of the county, such as repeated mistakes involving this or other applicants or inadequate personnel or training.

*Kampner, supra,* 86 Cal.App.3d 376,[5] stands for the proposition that a delay of 26 days, occasioned by the realities of the business of processing claims, is not unreasonable when it is the type of delay that "would have occurred in the normal course of business." (*Id.* at p. 380.) This proposition does not, however, protect a custom of the industry that itself may be unreasonable. The proper measure is "how long the procedure should have taken." (*Id.* at p. 383.) Therefore, an inadvertent delay should be unreasonable before such penalty can be imposed. (*Id.* at p. 382.)

### The WCAB's Decision Is Not Supported by Substantial Evidence

The WCAB annulled the 10 percent penalty imposed by the WCJ on Waters's PD benefits, finding that the delay was inadvertent human error similar to the clerical error *Stuart* found to be reasonable. The WCAB cited the following language from *Stuart* in reaching its decision: "The mistake in entering the change of address admittedly was careless. Nevertheless, in any endeavor in which humans are involved, mistakes are made. A reasonably short delay attributable to human error cannot, standing alone, be considered unreasonable. In requiring a finding of unreasonableness as the trigger for a section 5814 penalty, our Legislature intended something beyond the mere existence of any delay in the payment of benefits. A contrary interpretation of the statutory scheme would improperly conflate the penalty in section 4650, subdivision (d), which is an automatic, strict liability penalty, with the penalty in section 5814, defeating the Legislature's expressed intent to require a heightened showing of culpability to justify the greater penalty." (*Stuart, supra,* 18 Cal. 4th at pp. 1216-1217.)

The WCAB also recognized that whether a delay or refusal to pay benefits is unreasonable is a question of fact to be resolved by the WCAB, and that each case must be judged separately.

---

[5]In *Kampner* settlement checks were delayed because the long Thanksgiving Day weekend separated the time when the lawyers for the insurance carrier received the order approving settlement and the time when they mailed it to the adjusting agency. The claims adjuster then mailed the checks to the wrong address 26 days after the WCAB's order approving the settlement. There was no evidence on how long the checks were delayed due to being mailed to the wrong address, which was critical. The WCAB annulled the WCJ's imposition of a 10 percent penalty and the Court of Appeal agreed, finding the delay reasonable considering that the insurance carrier diligently processed the claim once it actually got the order after the holiday break.

The correctness of the WCAB's decision depends upon whether the evidence supports the conclusion that *"this type of error"* and the resulting delay were reasonable. Interestingly, the payment delays are not in significant dispute.

Payment of $208 for the period of March 13 to March 26, 1997, was $392 short. The April 8, 1997, correction of $56, also for the period March 13 to March 26, 1997, covered only one week and not two. The April 9, 1997, check of $336 for the period March 27 to April 9, 1997, was $336 short, which was also true for the April 23, 1997, payment.

To cover the arrears for the period of March 13 to April 23, 1997, a check for $1064 was issued on May 2, 1997. Therefore, the uncontradicted evidence is that Waters received incorrect PD payments for a period of about seven weeks.

Other evidence indicated that adjuster West was notified in each instance that the payments were erroneous. Waters's attorney wrote West after every wrong payment informing him of the correct rate. West admitted during trial that he received the letters along with phone calls. However, the wrong payments continued to be made until almost seven weeks had elapsed.

Other significant facts are that West testified he was overworked and inundated and frustrated with the amount of files that he had to adjust. West may in fact have been overworked and inundated; the manner in which he handled Waters's letters and phone calls is evidence to confirm his testimony. He also failed to review the stipulated award until 60 days after it was approved, which led to another correction on August 7, 1997. His working conditions may explain the delay but do not justify it.[6]

In this case, we had up to a seven-week delay in proper payment, where the insurer was on notice of the problem and there was no adequate explanation provided at trial for the repeated failure to correct the underpayment other than the adjuster's complaint that he was overworked, inundated and frustrated. When the mistakes were brought to the attention of defendants, a *prompt correction of the errors was not made.* Although the original miscalculation of the proper benefit amount may have been caused by a clerical or computer error, the delay in correcting the problems clearly was not.

---

[6]*Kerley* held that "the only satisfactory excuse for delay in payment of disability benefits, whether prior to or subsequent to an award, is genuine doubt from a medical or legal standpoint as to liability for benefits, and that the burden is on the employer or his carrier to present substantial evidence on which a finding of such doubt may be based." (*Kerley, supra,* 4 Cal.3d at p. 230.)

·This was institutional neglect. The further delay was not caused by a clerical error, cannot be excused by alleged inadvertence and was not contributed to by any action or omission on the part of Waters. The evidence does not support the conclusion that the delay was either brief, inadvertent, resulting from simple clerical human error or expected in the normal course of business. Considering the totality of the circumstances per *Kampner,* the decision of the WCAB is not supported by substantial evidence.

### DISPOSITION

The decision of the WCAB is reversed and the decision of the WCJ imposing a 10 percent penalty on PD benefits is reinstated.

Boren, P. J., and Nott, J., concurred.